GOLDSMITH, comptroller-general, *vs.* THE GEORGIA RAILROAD COMPANY.

THE GEORGIA RAILROAD COMPANY *vs.* GOLDSMITH, comptroller-general.

[These cases were argued at the last term, and decision reserved.]

1. That the limit on the taxing power of the state over the Georgia Railroad and Banking Company, is not expressed or indicated in the title of the act of incorporation, does not render that provision of the charter unconstitutional.

2. The limit on the taxing power extends to all the capital of said company, except so much thereof as was issued under the amendment of 1868 authorising the Clayton branch. 54 *Ga.*, 423. The correct mode of taxing the company's property under existing laws is to estimate all its property at its true value, just as if it belonged to a natural person, and upon so much of this value as equals the amount of the whole capital stock other than that issued for the Clayton branch, assess at the charter rate, (that is, at such per centage as will yield a revenue to the state equal to one-half of one per cent. on the net annual proceeds of all the company's investments); and upon the balance of such value, if any, assess at the general rate. If, however, the charter rate thus arrived at should exceed the general rate, then assess at the latter upon the whole value, as in no case is the general rate, that is, the rate *ad valorem* imposed upon property generally, to be exceeded.

3. Affidavit of illegality is not a remedy provided by law for resisting a *fi. fa.* issued by the comptroller-general for the taxes of a railroad company, except where the assessment and *fi. fa.* are based upon a return of property made by the company for the given year. If the comptroller-general, for lack of the proper annual return of the company's property, has proceeded against the company as a defaulter, assessing both tax and penalty, there may be a remedy in equity by injunction, but the remedy at law provided by the act of 1874, as modified and continued in force by subsequent acts, does not apply.

Constitutional law. Corporations. Tax. Illegality. Injunction. Before Judge GRICE. Fulton Superior Court. April Term, 1878.

Goldsmith, comptroller-general, issued three executions against the Georgia Railroad for tax claimed to be due for the years 1875, 1876 and 1877. These executions differed from each other only in dates and amounts. That for the year 1875 was for $19,201.18, " as its tax for the year 1875, assessed against it upon a return made by the comptroller-general of Georgia, according to law, from the best information he could procure." Levies were made and affidavits of illegality filed substantially as follows :

1. Because the charter of defendant was granted by a public act of the legislature, approved December 21, 1833, by the 15th section of which, it was provided that the stock of said company, and its branches, should be subject to a tax not exceeding one half per cent. per annum on the net proceeds of the investment. The stock of defendant was subscribed on the faith of these provisions of the charter, and they have never been repealed or changed with its consent. The tax assessed on which this execution is based, is on all the property of defendant in which its capital stock has been invested, and constitutes the stock of said company and its branches, and such tax is assessed on said stock, and far exceeds the amount of one-half per cent. on the net proceeds of the investment. Such percentage would be $2,128.39, which defendant has already paid to the comptroller-general.

2. Because there is no valid law under which said execution is issued. The act of February 28, 1874, is void in so far as it attempts to repeal any portion of the charter of defendant, or to impose another or greater tax than one-half per cent. per annum of the net profits of its investment, on the stock of the defendant, or the property in which said stock is invested, because said act is in conflict with the constitution of the United States as impairing the obligations of a contract.

The questions thus presented were submitted to the court without the intervention of a jury.

To the illegalities filed the plaintiff presented the following demurrer:

1. That the exemption claimed from taxation in the 15th section of the act of incorporation in 1833, being matter different from the title of the act, is unconstitutional and void.

2. That said act of incorporation gave no exemption to any part of said railroad or its branches, there being no negative words excluding taxing power; but if any exemption, it extended to the road to Madison only and Athens, and that all the rest of the stock of said company is, by the charter and amendments, subject to taxation at the pleasure of the legislature, subject only to the restrictions of the organic law.

3. That said exemption, if good, never exempted but $1,500,000 of the stock of said road, and that all the rest of the stock, to-wit: $2,700,000 was at the passage of the act, and still is, subject to taxation as well as all the bank stock, to-wit: $500,000, and all other property of said road except the said $1,500,000 of stock under the said 15th section of said act. (See act of 1833.)

4. That the stock of the Warrenton branch of said road was never exempt from taxation. (See act 22d December, 1835.)

5. If the Georgia Railroad and Banking Company ever had any exemption from taxation, that exemption did not embrace the two millions of extra stock authorized by the act of 1847 amending its charter. (See act to incorporate the Savannah and Albany Railroad and amend charter of Georgia Railroad, passed 25th December, 1847. Also acts of 20th December, 1849, and February 1, 1850, when the stock above $1,500,000 was expressly taxed.)

6. That by the act of 20th December, 1849, and 1st February, 1850, all the increased stock of said road above $1,500,000 was expressly subject to taxation by the state, and that without the acceptance of the act of 1849.

7. That whatever exemption from taxation the Georgia Railroad and Banking Company ever had under its original charter and amendments up to the 21st July, 1852, was lost by the act consolidating the Washington Railroad and Plank Road Company and Georgia Railroad and Banking Company.

8. That section of the act incorporating the Georgia Railroad and Banking Company and prescribing a limited rate of taxation upon its capital stock does not include the following property valued as follows, and owned by said road for the years 1875, 1876 and 1877, to-wit: (Here follows an enumeration of various classes of property, real estate, bonds of foreign and domestic railroads, stock in foreign and domestic roads, etc.)

9. Said Georgia Railroad and Banking Company is liable to taxation to the state from its banking operations on the following amounts of discounted paper due said company, to-wit: For 1875, $393,605.94; 1876, $137,234.11; 1877, $116,103.88.

10. The stock of the Washington Branch Railroad, after having been consolidated with the Georgia Railroad and Banking Company, is liable to taxation by the state under the acts of 1875, 1876 and 1877.

11. Said Georgia Railroad and Banking Company is liable to taxation for its undivided one-half interest in the Western Railroad of Alabama, situated and built within the limits of the state of Georgia.

The following facts were agreed on, questions of competency being reserved:

1. Statement as to banking capital of original bill, in the case of *The Georgia Railroad and Banking Company vs. The City Council of Augusta*, which case is reported in 26 *Ga.*, received as a fact.

2. The subscription to the Nashville and Chattanooga Railroad was made in 1848, before any act of the legislature authorizing such subscription. The original subscription was $250,000. It now exists, and existed in 1875, 1876 and

1877, in the shape of 650 shares of the stock of the Nashville, Chattanooga and St. Louis Railroad Company, of the nominal value of $25.00 per share. This stock—the 650 shares—worth about $150,000.

3. The act of 1847 was accepted, and, under it, stock was issued to make the nominal stock correspond with the cost of the road and the outfit.

4. No action was taken to refuse acceptance of the act of 1849. The refusal to accept consisted in the non-acceptance, in the absence of any action in stockholders' meetings to accept.

5. Amount of solvent discounted paper due company was : April 1, 1875, $393,605.94; April 1, 1876, $137,234.11; April 1, 1877, $116,103.88.

6. All the road and branch roads of the defendant were constructed under the acts of December 21, 1833, (original charter), of December 25, 1837, (extension from Madison to State Road), and act of January 21, 1852, (consolidation with the Washington Road.)

Other evidence was introduced not deemed material here.

The court overruled the demurrer, and held that the exemption from taxation in the original charter continues as to all property necessary for the purpose of the incorporation ; that the stock held by the defendant in foreign companies was not taxable; that the proof shows that defendant owns real estate and a banking house which is subject to an unpaid tax for the years 1875, 1876 and 1877, $291.66 for each year ; that the illegalities are therefore sustained, except as to such sum ; that the court is unable to determine, from the proof submitted, whether the defendant owns any other property which is liable to tax, and on which the tax has not been paid, and therefore this judgment is not to preclude the right of the state to proceed hereafter for any amount which may be due on the same.

To this judgment both parties excepted.

R. N. ELY, attorney-general; R. TOOMBS; D. M. DuBOSE, for the comptroller-general.

J. B. CUMMING; McCAY & TRIPPE; HENRY HILLYER, for the railroad.

BLECKLEY, Justice.

1. The title or caption of the act of incorporation was sufficient, for the reasons given in the Rome Railroad case, decided at the present term.

2. It seems to have been the purpose of this court to hold in 54 *Ga.*, 423, that except as to stock issued under the amendment of 1868 authorizing the Clayton branch, the limit put by the charter of the Georgia Railroad and Banking Company upon the taxing power, extends to all the capital stock of the corporation as a railroad company, and is irrepealable. These questions were fairly involved in that case, and the adjudication of them there announced ought to be accepted as final. It does not follow, however, that the court's attention was called to the distinction between a tax levied directly upon the stock, and a tax levied upon the property of the corporation, as to the excess in value of the property over and above the capital stock authorized by the charter and its amendments, and issued accordingly. To a kindred subject the court's attention was called, and upon it a ruling was made, namely: that the reduced rate of the charter would be restricted to the value of the road and its necessary appurtenances, and that any surplus capital kept on hand, or any investment not strictly within the enterprise contemplated in the charter, would be taxable at the general rate. This is taking a look at the property, as distinguished from stock, and the point of view is quite proper; but to arrive at the right mode of taxing the Georgia Railroad and Banking Company under existing laws (the charter provisions included), a further comparison is to be made—the amount of the stock is to be compared with the value of the property. There is a legislative longing to tax railroad property just as other property is taxed, and this is obviously a right direction for the legislative mind to take Taxation ought to be uniform and impartial. The accident

that capital is invested in this or that species of values ought to make no difference, except so far as the state's autonomy is fettered by contract. Though the power of taxation is conceded to be an attribute of sovereignty, it may, in respect to a given property or subject matter, be surrendered or limited by contract. Strange as this doctrine is in itself, and strange as it will probably seem to our posterity, it is, for the present, law in these states, and the courts of this generation must administer it. The contract with the Georgia Railroad and Banking Company fixes the amount of the capital stock of the corporation, or provides for fixing it, and then stipulates that the stock shall not be taxed beyond a certain limit. By this, the state meant that so many dollars of wealth might be and remain subject to the restricted taxation; it did not mean that what that wealth might produce by way of appreciation of the property in which it was invested, or by way of accumulated profit, should also be taxed as capital, and only as capital. The language of the fifteenth section of the original charter is as follows: "The stock of the said company and its branches, shall be exempt from taxation for and during the term of seven years from and after the completion of the said railroads, or any of them; and after that, shall be subject to a tax not exceeding one-half per cent. per annum on the net proceeds of their investments." We have no doubt that "one-half per cent." means one-half of one per cent. The existing laws do not tax stock as such, but they tax property *ad valorem*, and they seek to tax railroad property with no discrimination for or against it. The stock of the Georgia Railroad and Banking Company, in so far as the corporation is a railroad company, (not a bank,) is subject to a restricted taxation as to all stock authorized and subscribed prior to the adoption of the Code—January 1st, 1863, and this limit in date comprehends all stock except that issued by virtue of the amendment to the charter authorizing the Clayton branch. Now, stock and property ought to offset each other, dollar for dollar, so far as they

both extend, *pari passu;* but as the excess of stock over property would not be taxed by a tax levied exclusively upon property, so a tax upon the excess of property over stock is not a tax upon the stock. The rule of strict construction should be applied in administering the provision of the charter for restricted taxation. To the extent of the stock at its nominal amount, the provision must be respected, but the excess of property over that amount represents appreciation and accumulation, not stock, and is taxable at the general legal rate. In the second head-note, we have indicated with as much accuracy as possible the proper mode of taxing this corporation under existing laws. Though it has banking powers, the corporation is primarily and preeminently a railroad company, and its property as a bank should be estimated for taxation with its other assets. The banking powers, as now existing, seem to depend upon an act passed in 1870, and are therefore modified by the general provisions of the Code. As a bank, therefore, the corporation is not beyond the unrestricted taxing power of the state. But considered merely as a bank, its capital is non-taxable by reason of the act of 1876, which forbids any assessment whatever upon the capital of any bank, and provides for taxing the stockholders on their shares of stock. There is a difficulty in applying this mode of taxation to a railroad company with banking powers, where the stock for banking and the stock for railroad operations are blended and consolidated in ownership, that is, where there is no separation of bank shares from railroad shares. The best solution of the difficulty seems to be to keep sight of the main characteristic of the corporation, and to treat the railroad side, (which in the case of this company predominates in so high a degree,) as swallowing up the banking side. It is really the case of a railroad company owning a bank, and not that of a separate banking corporation owning a bank. The bank assets may be treated as a mere investment of the railroad corporation to the extent of their value, and taxable the same as the railroad and its appurtenances, or as other

property held in excess of the whole capital stock. It may be worth while to explain, that the reason why we do not think there is a limit of the restricted taxation to stock actually paid in, as we ruled there was in the case of the Rome Railroad Company, is owing to there being nothing said in the Georgia Railroad charter on the subject, in the taxation clause, and no reference made to other legislation which embodies that limitation. In fixing the amout of the Georgia Railroad stock, the amount of stock issued and outstanding is to govern, so that it be not in excess of the amount authorized by the charter and the amendments thereto. And it is to be remembered, also, that amounts authorized since the Code went into effect are not to be counted in any estimate for restricted taxation. This results from the settled rule that restrictions are repealable if they do not ante-date the Code ; and the railroad tax act of 1874 repeals whatever of exemption or restriction is repealable. We will not undertake now to determine what particular assets of the Georgia Railroad are taxable, further than we have indicated in the second head-note. Let the property of the company be treated, in the first instance, just as if it belonged to a natural person. Then, if the valuation exceeds the capital stock to which restricted taxation applies, let the excess be rated as if it belonged to a natural person. This rule is simple and easy and we suppose there will be no serious difficulty in carrying it out. First administer the charter so far as the restricted rate goes, and then, as to the balance of the property, administer the general tax law.

3. But whether the corporation has been over-taxed or not, the court erred in the disposition made of the case. The affidavit of illegality ought to have been dismissed, for there is no law giving jurisdiction of that remedy, under the facts in the record. Affidavit of illegality is not a remedy provided by law for resisting a *fi. fa.* issued by the comptroller-general for the taxes of a railroad company, except where the assessment and *fi. fa.* are based upon a return of property made by the company for the given year.

The statute requires a return to be made for each year; and certainly the legislature has power to exact such a return. Why should not railroad companies make, each year, the returns which the law requires them to make? What has exemption from taxation or restrictions upon the taxing power to do with the duty of making returns? Let the returns prescribed by statute be made, and the state can and will still abide by its obligations in respect to the imposition of taxes. No company can be allowed to absolve itself from the duty of making returns. In the present instance, the comptroller-general was left to grope in the dark as to the company's assets. The scheme of the statute is not to leave both law and fact open, but to settle the facts by a return, and then let the company raise the question of law by affidavit of illegality. There is no presumption of law, certainly none in direct opposition to the statutory requisites for a return, that the property remains the same, or of the same value, from year to year, and for every year after the first return is made. If a company wants to avail itself of a statutory remedy, it must comply with the terms laid down in the statute. The general rule is non-intervention by the courts in the collection of taxes. By special statute, railroad companies may resort to an affidavit of illegality, but the same statute requires that they shall make a return, and it points out what the return shall contain. The Georgia Railroad and Banking Company did not comply with this statute, and therefore it has no right to prosecute an affidavit of illegality, and the superior court of Fulton county has no power to entertain the affidavit. We accordingly reverse the judgment, with direction that the affidavits of illegality be dismissed for the want of jurisdiction in Fulton superior court, on the facts apparent in the record. There may be a remedy in equity by injunction, but that question is open, no bill having been filed.

Judgment reversed.