LOUISVILLE & N. R. CO. et al. v. WRIGHT, Comptroller General.

(District Court, N. D. Georgia. July 18, 1912.)

1. TAXATION (§ 124½*)—RAILROADS—CONSTRUCTION OF LEASE—INTEREST TAKEN BY LESSEE.

The charter of the Georgia Railroad & Banking Company (Act Ga. 1833, p. 262, § 12) authorized such company to "rent or farm out all or any part of their exclusive right of transportation—on the railroad or railroads, with the privilege to any individual or individuals, or other company, and for such term as may be agreed on." In 1881 the company, acting under such authority, "rented and farmed out" to complainants for a term of 99 years all its privileges of transportation, and also rented and farmed out "as the means of full enjoyment of the privileges hereinbefore rented and farmed out" its railroad and all its branches and extensions, together with its right of way, roadbeds, stations, etc. Civ. Code Ga. 1910, § 3691, provides that "when the owner of real estate grants to another simply the right to possess and enjoy the use of such real estate either for a fixed time or at the will of the grantor, and the tenant accepts the grant, the relation of landlord and tenant exists between them. In such case no estate passes out of the landlord, and the tenant has only a usufruct which he cannot convey without the landlord's consent and which is not subject to levy or sale." *Held,* that complainants did not take an estate for years, but came within the provisions of such statute, and became tenants having the mere right of possession and use with no interest in the property which was taxable, all estate therein subject to taxation remaining in the lessor, and especially in view of the fact that for 29 years the state acquiesced in such construction and collected taxes only from the lessor.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 124½.*]

2. TAXATION (§ 124½*)—RAILROADS—CHARTER EXEMPTION—INTERESTS OF LESSEE.

The charter of the Georgia Railroad & Banking Company (Acts Ga. 1833, p. 263, § 15) provides that the company shall be subject to a tax not exceeding one-half of 1 per cent. per annum on the net proceeds of its investment. As construed by the courts, such provision constitutes a contract which exempts from ad valorem taxation all property of the company used in producing its income, including renewals, alterations, and betterments of the original property made from time to time. *Held* that, while lessees of the property for a long term under their contract took no interest in the property which was taxable to them, the exemption did not extend to certain new terminal property in which they acquired an interest, and which was not merely a betterment of the lessor's property, and only indirectly, if at all, contributed to its income.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 124½.*]

In Equity. Suit by the Louisville & Nashville Railroad Company and the Atlantic Coast Line Railroad Company against William A. Wright, Comptroller General of the state of Georgia. On final hearing. Decree for complainants in part.

For former opinion, see 190 Fed. 252.

Jos. R. & Bryan Cumming, of Augusta, Ga., and McDaniel & Black, R. C. & P. H. Alston, Tye, Peeples & Jordan, and King, Spalding & Underwood, all of Atlanta, Ga., for complainants.

T. S. Felder, Atty. Gen., and John C. Hart and Samuel H. Sibley, both of Union Point, Ga., for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

NEWMAN, District Judge. This case is now before the court for final decree on a bill filed by the Louisville & Nashville Railroad Company and the Atlantic Coast Line Railroad Company, lessees of the Georgia Railroad & Banking Company, against William A. Wright, Comptroller General of the state of Georgia, to enjoin the collection of certain taxes assessed against them by the Comptroller General. The case is here on bill, answer, and agreed statement of facts; this agreed statement of facts being in writing and signed by counsel for the parties, respectively. The facts necessary to an understanding of the case are as follows:

The Georgia Railroad Company was chartered by an act of the General Assembly of the state of Georgia December 21, 1833 (Acts 1833, p. 256). On December 18, 1835 (Acts 1835, p. 180), the name was changed to the Georgia Railroad & Banking Company, by which name it is still known. In the original charter of the company, granted in 1833, is this provision (section 15):

"The stock of the said company and its branches shall be exempt from taxation for and during the term of seven years from and after the completion of the said railroads, or any one of them; and after that, shall be subject to a tax not exceeding one-half per cent. per annum on the net proceeds of their investments."

The question as to whether or not this scheme of taxation is binding upon the state, and still exists, has been before the courts several times. It was before the Supreme Court of Georgia in City of Augusta v. Georgia R. & Banking Co., 26 Ga. 651, and in the case of State of Georgia v. Georgia R. & Banking Co., 54 Ga. 423, and Goldsmith, Comptroller, etc., v. Georgia R. & Banking Co., 62 Ga. 485, and before this court in Georgia R. & Banking Co. v. Wright, Comptroller General (C. C.) 132 Fed. 912, and, finally, on appeal from this last-named decision, before the Supreme Court of the United States, settling the matter definitely and finally as between the state and the Georgia Railroad & Banking Company, in favor of the Georgia Railroad & Banking Company's right to be taxed one-half of 1 per cent. on the net proceeds of its investment. Wright, Comptroller General, v. Georgia R. & Banking Co., 216 U. S. 420, 30 Sup. Ct. 242, 54 L. Ed. 544. So clearly is this settled that the learned counsel for the Comptroller General in the present case state in their brief:

"It is conceded by the Comptroller General that at the time the state incorporated the Georgia Railroad & Banking Company the Legislature had the power to make, and did make, a contract with the Georgia Railroad & Banking Company never to tax that company in excess of the rate fixed in the charter, to wit, one-half of 1 per cent. on its net income, and that as far as that company is concerned that it has an irrevocable contract with the state"—citing the case in 216 U. S., 30 Sup. Ct., 54 L. Ed., just mentioned.

The original charter of the Georgia Railroad & Banking Company of 1833 (section 12) contains this provision:

"That the said company may, when they see fit, rent or farm out all or any part of their exclusive right of transportation or conveyance of persons, on the railroad or railroads, with the privilege to any individual or individuals, or other company, and for such term as may be agreed upon. * * *"

On May 7, 1881, the Georgia Railroad & Banking Company entered into a contract with William M. Wadley, under the provision of this charter authorizing it to "rent or farm out," etc., in which it was provided that the Georgia Railroad & Banking Company—

"hath rented and farmed out to said party of the second part and his assigns, and does by these presents rent and farm out to said party of the second part and his assigns for the full term of ninety-nine years from the first day of April, one thousand eight hundred and eighty-one, all its privileges, general and exclusive, of transporting persons, merchandise, produce and every kind of property whatsoever, which is or may become the subject of railroad transportation, over the lines of railroad owned or controlled by the party of the first part, to the full extent that the party of the first part has and enjoys, or is now entitled to have and enjoy, or may hereafter acquire the right to have and enjoy such privileges, and subject to all the obligations and duties, imposed by its charter in this behalf upon the party of the first part.

"And the party of the first part has also rented and farmed out, and does by these presents rent and farm out to the party of the second part for the aforesaid term of ninety-nine years, as the means of full enjoyment of the privileges hereinbefore rented and farmed out, the following property, to wit:

"The Georgia Railroad from Augusta to Atlanta, and its branches, viz.: The Branch from Barnett to Washington; the branch from Camak to Warrenton, and the branch from Union Point to' Athens, with all the extensions thereof which may be made hereafter to other points; also, the Macon and Augusta Railroad, from Warrenton to Macon; together with the rights of way, roadbeds, depots, stations, warehouses, elevators, workshops, wells, cisterns, water tanks, and other appurtenances of said railroad and branches."

The Louisville & Nashville Railroad Company and the Atlantic Coast Line Railroad Company have, by successive conveyances, become the successors of William M. Wadley, and have been operating said railroads thereunder for a number of years.

The main question for determination here is, Did the Georgia Railroad & Banking Company, by this contract and agreement, give to Wadley and his assigns a mere usufruct of this property, or did it convey an estate for years? The contention for the Comptroller General is that this instrument, properly construed, vested an estate in complainants, making them liable, under the laws of Georgia, for the taxes thereon. The contrary contention is that this contract conveyed a mere usufruct, and that, even if it be an estate for years as opposed to an usufruct, it would still leave the landlord liable for the entire taxes due on the property.

[1] The first question, therefore, is, Do the complainants occupy the position of tenants having the mere right of possession and use, or have they an estate for years in the property? Section 3691 of the Code of Georgia of 1910 is as follows:

"When the owner of real estate grants to another simply the right to possess and enjoy the use of such real estate, either for a fixed time or at the will of the grantor, and the tenant accepts the grant, the relation of landlord and tenant exists between them. In such case no estate passes out of the landlord, and the tenant has only a usufruct, which he cannot convey except by the landlord's consent, and which is not subject to levy and sale; and all renting or leasing of such real estate for a period of time less than five years shall be held to convey only the right to possess and enjoy such real estate, and to pass no estate out of the landlord, and to give only the

usufruct, unless the contrary be agreed upon by parties to the contract, and so stated therein."

Section 3685, under the chapter heading of "Estates for Years," defines an estate for years as follows:

"An estate for years is one which is limited in its duration to a period fixed, or which may be made fixed and certain. If it be in lands, it passes as realty in this state. It may be for any number of years, so that the limitation be within the rule against perpetuities."

The language used in the contract between the Georgia Railroad & Banking Company and Wadley is, "hath rented and farmed out," following the exact language of section 12 of the charter, "all its privileges, general and exclusive, of transporting persons, merchandise, produce and every kind of property whatsoever," etc., and "has also rented and farmed out, and does by these presents rent and farm out, to the party of the second part for the aforesaid term of ninety-nine years, as the means of full enjoyment of the privileges hereinbefore rented and farmed out," etc. So that the language of the instrument clearly is such as to bring it within the section of the Code of Georgia defining the relation of landlord and tenant. I do not see anything whatever in the definition of landlord and tenant to prevent the creation of such a relation in Georgia for any number of years. The length of the tenancy would be immaterial so far as anything is said in this provision of the statute.

If I understand the argument here, it is not denied that, if the relation of landlord and tenant exists in this case, the Georgia Railroad & Banking Company, as owner, is liable for the taxes, but the contention is, as stated above, that the effect of the transaction is to create such an estate in the complainants as to render them liable for the taxes. If the Georgia Railroad & Banking Company is still the owner of this property, and is consequently liable for the taxes on the same, it seems clear that it is liable only under the scheme of taxation provided for it by the Legislature in its original charter. If an estate has been created in the property, a difficult question would arise as to whether or not it was such an estate as would make complainants liable for the entire taxes on the property, or for the lesser liability, that of taxes on the value of its lease-hold estate.

In my opinion the relation of landlord and tenant exists; that is, the right in complainants here, the Louisville & Nashville Railroad Company and the Atlantic Coast Line Railroad Company, to possess and enjoy the property, and that they have no estate therein. This view of the case, to my mind, is supported by a good many things. In the first place, by section 12 of the original charter of the Georgia Railroad & Banking Company that company is given the power to rent or farm out the right of transportation. After giving this right in the twelfth section, in the fifteenth section comes the provision with reference to taxation at one-half of 1 per cent. on the net income. The very way in which these two things are placed in the charter seems to indicate that, even though

operated by others, the taxes imposed should be upon the income, whether the income came from the operation of the road by the chartered company or by others to whom it might rent or farm out the privilege of transportation.

In the next place, the character of the contract itself is significant. It rents and farms out, in accordance with the charter, "all its privileges, general and exclusive, of transporting," etc., and "as the means of full enjoyment of" such privileges, rents, and farms out the railroad and all its branches and any extensions of the same, together with the rights of way, roadbeds, depots, stations, warehouses, elevators, workshops, wells, cisterns, water tanks, and other appurtenances of said railroad and branches. It rents and farms out the right of transportation, and, as a means of rendering that right effective, the railroad property. It conveys the right to possess and use the property as a means of carrying out the right of transportation, and nowhere, so far as I can see, conveys any estate in the property; nothing but its use and occupation for the purpose stated.

I think in addition to this that the trend of the decisions of the Supreme Court of the state indicates that this is the view of that court as to the proper relationship between the Georgia Railroad & Banking Company and the companies engaged in operating the railroad. The company is held liable to the public just as if it were engaged in operating the railroad itself. The only instance of nonliability, so far as I have observed, is in relation to the employés of the lessees. They being employés of the lessees, their rights for injuries received while in such employment were, of course, against their employers. But otherwise, as to passengers and those for whom it was engaged in carrying freight, and in other instances, the original company itself has been held liable, and in many cases. The latest case, or certainly one of the latest, on the subject, is that of Georgia Ry. & Banking Co. v. Haas, 127 Ga. 187, 199, 56 S. E. 313, 318 (119 Am. St. Rep. 327, 9 Ann. Cas. 677), and in the opinion of Judge Lumpkin it is said:

"Counsel for plaintiff in error contend with ability and ingenuity that under the peculiar terms of the charter of the Georgia Railroad & Banking Company (Acts 1833, p. 262; Acts 1835, p. 180) it is not subject to the general rule of liability for the acts of its lessees above referred to. But the agreed statement of facts shows that it has leased the right to operate the entire railroad. If the original company leased its road and turned over the operation of its franchises to others, it is subject to the rule. When the original charter was granted, railroad building was in its infancy, and turnpikes were great public highways. Certain expressions were used 'which seem perhaps rather inapt to modern railroad conditions. But, in view both of the charter and the general law, the Legislature never intended that lessees could take the place of the original company in the operation of its cars and franchises as a railroad company, and the original company be entirely freed from liability in connection therewith."

None of the cases before the Supreme Court of Georgia have discussed the question involved here, because that question had never been made or suggested, so far as I know, until the action of the Comptroller General in trying to tax the property ad valorem and the bringing of this proceeding as a result of that action.

Another reason why I think the view expressed is the correct view

of the relation between the Georgia Railroad & Banking Company and these operating companies is that the state had acquiesced for 29 years —that is, from 1881 until 1910—in this view of the matter. The Georgia Railroad & Banking Company had returned and paid taxes in accordance with the provisions of the charter on the net income derived from the operation of the railroad during that period without any question being made about the correctness of the same. In Wright v. Georgia R. & Banking Co., 216 U. S. 420, 30 Sup. Ct. 242, 54 L. Ed. 544, in the opinion of Mr. Justice Lurton, in discussing the question of the meaning of the word "stock" in section 15 of the company's charter (216 U. S. 426, 30 Sup. Ct. 244 [54 L. Ed. 544]), after stating that it means "capital," he says this:

"That this is the way in which it has been read and interpreted by everybody who has had to do with the matter of taxation in an official way since 1845, when the railroad seems to have been finished, affords strong evidence that this construction accords with the intent of the charter."

In Temple Baptist Church v. Georgia Terminal Co., 128 Ga. 669, 680, 58 S. E. 157, 161, Judge Cobb, speaking for the Supreme Court of Georgia, says:

"The long continued practice of the executive or the legislative department will be treated as persuasive authority by the courts," etc.

Of course, it is not contended that the action of the proper officials of the state in this matter would estop the state, but the fact of the long continued acquiescence of the state is stated, in the language of Judge Cobb, as "persuasive authority."

Entertaining the opinion that I do therefore, gathered from the charter, the contract between the parties, the trend of the Georgia decisions, and the long acquiescence by the state in the action of the Georgia Railroad & Banking Company in continuing to return its property for taxation in accordance with the charter, on the net income derived from its operation, notwithstanding the fact that it was operated by other parties, that the relation of landlord and tenant, under the statutes of Georgia, exists, and that complainants have a mere usufruct to the property and not an estate of any kind therein, it is almost useless to enter upon a discussion of the numerous authorities cited by counsel pro and con in their very able and thorough arguments and in their briefs submitted to the court. It is claimed, however, that there are decisions by the Supreme Court of the state which give force to the contrary view of this matter.

One of the cases so relied upon is Wells v. Savannah, 87 Ga. 397, 13 S. E. 442. In that case the land was sold subject to a perpetual ground rent. Chief Justice Bleckley, delivering the opinion in that case, says:

"Possession of real estate attended with an indefeasible right to occupy in perpetuity, and also with an indefeasible right to be clothed with the fee upon the voluntary payment of a fixed sum as purchase money, will constitute the purchaser the substantial owner of the property. So long as his possession, supplemented by these rights, continues, he is not a mere lessee but a purchaser admitted into possession on the faith of his contract of purchase."

I do not think that case is at all like this case.

Another case relied upon is that of Central R. & Banking Co. v. Macon, 43 Ga. 605. As I understand the question involved in that case, it is not an authority either way upon the question now before this court, but it was decided by the majority of the court, Judge Mc-Cay dissenting, that the Macon & Western Railroad Company had the right to lease the road from the Central Railroad & Banking Company notwithstanding there was a provision in the agreement for a sale of the road after legislative authority was obtained. The only thing I understand counsel to emphasize in the case is the use of the word "lease" in connection with that agreement. It may be remarked here that this use of the word lease is not deemed very material if it appears that what was done was to create the relation simply of landlord and tenant and to contract merely for the right to use and not to convey an estate in the property.

Section 3690 of the Code of Georgia, which must be read in connection with the section heretofore cited, is as follows:

"When one grants to another an estate for years out of his own estate, reversion to himself, it is usually termed a lease. It may be confined to a particular interest in lands, such as mining or agricultural, in which event no other interest passes. If no object of the lease is stated, the mining interest will not pass unless the circumstances justify an implication of such an intention in the parties."

The case of South Carolina & G. R. Co. v. Augusta Southern R. Co., 107 Ga. 164, 33 S. E. 36, is also cited as an authority here. In that case the plaintiff company had "granted, demised, leased and farm let" to the latter company its railroad right of way, depots, yards, rolling stock, and all its other property during the corporate existence of the lessee with warranty for its enjoyment. The questions made in the case were whether the contract between the parties created a partnership, and, if not, whether there was a trust relation between the parties. In discussing the case Chief Justice Simmons in the opinion used the expression that the lessee during the term of the lease was the absolute owner of the property, with the right to use it and operate it as it deemed best. 107 Ga. 182, 33 S. E. 38. In another place (107 Ga. 183, 33 S. E. 38) he used the language:

"This was purely a contractual relation between landlord and tenant, which was enforceable at law."

The Chief Justice was discussing entirely the question made in that case, which related to whether it was a case for equitable relief, as stated, whether a partnership was created and whether a trust relation existed, and was not discussing at all the question that is involved here, certainly not in any manner attempting to decide whether the lessee there had acquired an estate in the property, or whether it was a mere ordinary relation of landlord and tenant under the Georgia law. It cannot in any sense be considered a decision affecting the special matter at issue here.

There is another decision of the Supreme Court of Georgia, and a recent decision, that contains language which seems to me peculiarly applicable here. That is the case of the State of Georgia v. Western

& A. R. Co., 136 Ga. 619, 71 S. E. 1055. The right of the state to put certain taxes on the Western & Atlantic Railroad Company, a lessee of the road from the state, was the question involved, and referring to the lease contract there, which was for 29 years from December 29, 1890, Judge Evans, in the opinion, says:

"The case presented is not that of a perpetual leaseholder, where the tenant is the virtual owner of the property, entitled to its use forever and subject to pay taxes thereon as owner, as was the case in Wells v. Savannah, 87 Ga. 397, 13 S. E. 442. In making the lease the state reserved the right of forfeiture on broken conditions subsequent, and imposed terms and conditions indicating that no estate was intended to be conveyed to the lessee, but that the lessee was to have only a usufructuary interest during the lease period."

In the lease between the state and the Nashville, Chattanooga & St. Louis Railway Company the act authorizing the lease (Acts 1889, p. 368) provided that:

"If the lessee fails to comply with the lease contract, the Governor, at his option, may declare the lease forfeited and take immediate possession."

Here the lease contract provides that:

"The party of the first part reserves the right, in addition to all other remedies now usual or hereafter to become usual in the law, to enter upon and resume possession and enjoyment of all its property for the breach of any of the covenants or agreements of this indenture."

While there may be some difference between the "terms and conditions" in the lease of the State to the Western & Atlantic Railroad Company and that of the Georgia Railroad &. Banking Company, it is well understood and well known that in practical effect both roads have been operated since the contracts in very much the same way, the lessee companies, in both instances, keeping up and improving the track, buying new rolling stock, and keeping the railroads up with what modern railroading requires.

Counsel for the Comptroller General here rely upon the case of Jetton v. University of the South, 208 U. S. 489, 28 Sup. Ct. 375, 52 L. Ed. 584. In that case the University of the South, known familiarly as Sewanee, had been granted an exemption from taxation as to 1,000 acres of land to be used for the purposes of the University. The language of the exempting section of the act is as follows (208 U. S. 491, 28 Sup. Ct. 376 [52 L. Ed. 584]):

"Be it further enacted, that said university may hold and possess as much land as may be necessary for the buildings and to such extent as may be sufficient to protect said institution and the students thereof from the intrusion of evil-minded persons who may settle near said institution, said land, however, not to exceed ten thousand acres, one thousand of which, including buildings and other effects and property of said corporation, shall be exempt from taxation as long as said lands belong to said university."

In 1903 it appears that an act was passed by the Legislature of Tennessee taxing leasehold interests in land. It also appears that the 1,000 acres of land were duly surveyed and marked out and many buildings erected for the university, and "leases were also granted by it of lots within the thousand-acre limit to persons who, under such leases, built upon the lots severally leased to them. By this method

a population of about 1,000 or 1,200 people had been gathered within the village called Sewanee, situated within the limit stated, and which was a barren wilderness when the charter was granted. In fact, the very existence of the village is the result of the efforts of the university." Under the act of the Legislature of 1903, proceedings were taken to subject the leasehold interests to taxation. Out of this grew the decision of the Supreme Court of the United States referred to above. The Supreme Court held that there was a leasehold interest in that case subject to taxation. It was stated in the opinion, however, that it was not necessary to determine what the exact interest of the lessees was. If it was believed that the complainants here had such a leasehold interest in this property, it would be an interesting question as to how and in what way it could be reached in Georgia for taxation. The Comptroller General has assessed the whole property for taxation, both the fee and entire interest otherwise in the property, and there is no attempt to separate any leasehold interest from the fee.

In Wright v. Georgia R. & Banking Co., supra, the opinion discusses the extent to which the Georgia Railroad & Banking Company could claim that the scheme of taxation provided for in the charter—that is, for taxes on the net income only—applied, and, after stating the fact that the road at present has a value of $4,000,000 in excess of the cost and of the authorized capital, proceeds in this way:

"This plan of tax upon net earnings is quite inconsistent with any other form of taxation, and is absolutely independent of any question as to whether the property thus taxed only upon its profits should have a less or greater value than the capital invested. A tax upon earnings is a tax which at last covers and includes, unless double taxation is intended, all property necessarily held and used to make that income, including the enjoyment of its franchises. It is not to be presumed, in the light of the public policy of the time, that the state intended that this pioneer railroad should be subjected to any form of taxation of property which produced the taxable income. We are therefore of opinion that this property is not subject to any other method of taxation than that of the special system stipulated for by the contract, and that the act of the Georgia Legislature in so far as it provides for an ad valorem tax upon any part of this invested capital of the Georgia Railroad & Banking Company does impair the obligation of the contract."

So it will be perceived that the view of the Supreme Court was that this railroad and its accretions during all the years of its existence and during the lease, and all the property used by it to make this net income, was not taxable otherwise than provided in its charter, because to tax part of it in any other way would be double taxation. The discussion of this, however, may be a mere abstraction, because, as stated above, I have reached the conclusion that a mere usufruct exists as to this property.

[2] In the decision of the Supreme Court of the United States cited above, in Wright v. Georgia R. & Banking Co., there are suggestions made which, it seems to me, are important in reaching a conclusion as to whether there is any of the property from which the Comptroller General is now seeking to collect an ad valorem tax subject to that tax. It is clear to my mind that the interest of the lessee companies in the Atlanta terminals is subject to taxation in that way. Mr. Justice Lurton in that opinion says that:

"An investment made nearly 75 years since of $4,156,000 has now a value of $4,000,000 in excess of that cost. The property is the same property. The conceded fact is that through renewals, alterations, and betterments made from time to time, and the natural increase in the value of the road, this appreciation has come about. There has been no suggestion that there has been any hiding away of capital added by either new stock, or by the use of bonds or other forms of credit, nor that the improvements made from time to time, called 'renewals, alterations and betterments,' have been other than the necessities of an enlarging business and the improved maintenance naturally demanded."

It is the road thus spoken of by Mr. Justice Lurton, with its "renewals, alterations, and betterments," that makes the net income which is subject to taxation. Anything beyond this or outside of this would appear to be subject to ad valorem taxation.

So far as I have been able to gather from the agreed statement of facts and from the agreement between the Louisville & Nashville Railroad Company, called the Louisville Company, the Atlanta & West Point Railroad Company, called the West Point Company, and the lessees of the Georgia Railroad & Banking Company, called the lessees, these terminals, brought into existence under this agreement, are a separate and distinct thing from that which produces the taxable income. There may be some part of this terminal property which amounts to a mere betterment of the old property, and not thus subject, but what that may be I am unable at present, from the facts before me, to determine. Counsel agree, as I understand it, that, should this property be found so subject, it would require either a reference or some further action to determine this. Probably in a way these terminals do help the income, but I do not believe that they come within the classification of "renewals, alterations and betterments" of the original property. They seem to me to be separate and apart from that. I think they are subject to ad valorem taxation by the state.

The claim by the Comptroller General of the right to collect certain ad valorem taxes of the complainants because of an issue of bonds by the Georgia Railroad & Banking Company I am unable to understand satisfactorily from the pleadings or from the agreed statement of facts. It makes clear, of course, the fact that bonds were issued and that the bonds, or the proceeds thereof, were used in connection with a certain railroad, but this claim of a right to tax by reason thereof is not clear to me. No opinion, therefore, is expressed upon this feature of the case, and counsel will be further heard before it is determined.

I do not believe that the claim for ad valorem taxes on the improved terminals in Augusta or on the slight extension of the terminus of the road into Athens can be sustained. It seems to me that both of these come within the classification of "renewals, alterations and betterments" to the road as it existed originally.