### CENTRAL OF GEORGIA RY. CO. v. WRIGHT, Comptroller General of Georgia.

#### (District Court, N. D. Georgia.   March 18, 1913.)

#### No. 29.

1. TAXATION (§ 124½*)—RAILROADS—CHARTER EXEMPTION—EFFECT OF LEASE.
    Under the law of Georgia, a lease of a railroad and equipment in ordinary terms does not pass any estate in the property to the lessee, but it becomes a tenant with the right to possession and use only, and such lease does not affect a provision of the lessor's charter limiting the right of taxation by the state to a certain percentage of its annual income.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 224–226, 240–242, 260–263, 272;  Dec. Dig. § 124½.*]

2. TAXATION (§ 124½*) — RAILROADS — CHARTER EXEMPTION — TRANSFER OF LESSEE'S INTEREST.
    A sale under foreclosure of the leasehold interest of the lessee in such a lease and a new lease or renewal executed by the lessor to the purchaser under a general power to lease conferred on it by statute did not affect the title to the property, which remained in the lessor as before with the right to the limited taxation given by its charter, although the lease required the lessee to pay the taxes assessed against the lessor or its property under its charter.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 224–226, 240–242, 260–263, 272;  Dec. Dig. § 124½.*]

In Equity.   Suit by the Central of Georgia Railway Company against William A. Wright, Comptroller General of the State of Georgia. Decree for complainant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Little & Powell, of Atlanta, Ga., and Lawton & Cunningham, of Savannah, Ga., for complainant.

T. S. Felder, Atty. Gen., and John C. Hart and Samuel H. Sibley, both of Union Point, for defendant.

NEWMAN, District Judge. [1] This case involves the right of the Comptroller General of the state of Georgia to assess ad valorem taxes against the Augusta & Savannah and the Southwestern Railroads as the property of the Central of Georgia Railway Company. The Augusta & Savannah Railroad was originally chartered as the Augusta & Waynesboro, its name having been changed in 1856 by an act of the Legislature (Laws 1855–56, p. 194). Under the original charter dated December 31, 1838 (Laws 1838, p. 174), it was enacted (section 13):

"That the said railroad and the property of said company shall not be subject to be taxed higher than one-half of one per cent. on its annual income; and no city or town corporation shall have power to tax the stock of said company, but may tax any property, real or personal, of said company within the jurisdiction of said city or town, in the same ratio of taxation of like property."

The Southwestern Railroad Company was chartered by an act of the General Assembly in 1845 (Laws 1845, p. 132). In that act (section 14) it was provided:

"That said railway, and its appurtenances, and all property therewith connected, shall not be subject to be taxed higher than one-half of one per cent. upon its annual net income."

By an act of the Legislature of Georgia, approved January 22, 1852 (Laws 1852, p. 119), the Central Railroad & Banking Company of Georgia, the Augusta & Savannah Railroad (then known as the Augusta & Waynesboro Railroad), and the Southwestern Railroad Company were authorized to enter into leases of the two last-named railroads to the former. The act is entitled:

"An act to authorize the Central Railroad & Banking Company of Georgia to lease and work such railroads as now connect, or may hereafter connect, with the Central Railroad, and to authorize the board of directors of such railroad companies as now have or may hereafter have their respective railroads connecting with the said Central Railroad to make leases thereof for a term of years, or during the continuance of their respective charters."

The Augusta & Savannah Railroad was leased to the Central Railroad & Banking Company of Georgia by an instrument dated May 1, 1862. The language of the lease, so far as material for the purpose now in mind, is as follows:

"That, whereas, in and by an act of the General Assembly of the state of Georgia, passed on the 22nd day of January, 1852, express authority was granted to the said Central Railroad & Banking Company of Georgia, to lease the Augusta & Waynesboro Railroad, and all roads connecting with the Central Railroad, and, whereas, also it is provided in the charter of the said Augusta & Savannah Railroad, formerly the Augusta & Waynesboro Railroad, that said company may rent or farm out all, or any part of their exclusive right of transportation of freight or conveyance of passengers to any other company; and, whereas, the said the Augusta & Savannah Railroad has agreed to lease to the said the Central Railroad & Banking Company of

Georgia, their railroad, leading and running from Millen to Augusta, with all their locomotive engines, cars and material of any kind and description, and their right to carry freight and passengers, and to collect the money therefor. Said lease to begin the day of the date of these presents, and to run and continue during the whole charter of the said Augusta & Waynesboro and of the said Augusta & Savannah Railroad. That is to say, in perpetuity, at a rent of seventy-three thousand dollars per annum, payable as follows: Annually."

"Now this indenture witnesseth: That the said the Augusta & Savannah Railroad, formerly Augusta & Waynesboro Railroad, hath leased and let, and by these presents doth lease and let and grant, unto the said the Central Railroad & Banking Company of Georgia all and singular the railroad leading and running from the Central Railroad at Millen to the City of Augusta, together with all the engines, locomotive or stationary cars, repair cars, wells, cisterns, sidings, depots, stations, warehouses, fixtures, rights, members and appurtenances, and privileges of every kind and nature whatsoever."

The language of the lease of the Southwestern Railroad to the Central Railroad & Banking Company entered into in writing on June 24, 1869, so far as material here, after reciting that the same was made in accordance with the act of January 22, 1852, authorizing the making of the lease, is as follows:

"That the said the Southwestern Railroad Company, for and in consideration of the covenants, conditions and agreements hereinafter set forth, on the part of the said the Central Railroad & Banking Company of Georgia, to be performed and kept, hath demised, leased, and to farm let, and by these presents doth demise, lease and to farm let all the railroad of the said the Southwestern Railroad Company," etc.

The consideration for this lease is that the Central Railroad & Banking Company will declare and pay to the stockholders of the said Southwestern Railroad Company dividends—

"which shall bear to the dividends declared and paid to its own stockholders the ratio of eight to ten—that is, to say eight dollars to each share of Southwestern Railroad stock for every ten dollars declared and paid to each share of its own stock, and that no semiannual dividend so declared and paid to the stockholders of the Southwestern Railroad Company shall be less than at the rate of seven per cent. per annum on the par value of their stock; and that whenever any stock dividend or division of assets or accumulations shall be declared, paid or made to the stockholders of the said Central Railroad & Banking Company of Georgia a similar dividend or distribution shall be paid and made to the stockholders of the Southwestern Railroad in the same proportion of eight to ten, and that all such dividends and distributions of every sort shall be paid to the stockholders of the Southwestern Railroad Company at Macon and Savannah, as the said company has heretofore paid its dividends, and be free from all taxes to the stockholders."

It further provides as follows:

"It is understood that nothing herein contained is in any wise to affect the corporate character or existence of the said the Southwestern Railroad Company, but it is to maintain its corporate organization, not only until the first day of December next, but at all times thereafter during the continuance of its charter, whether as now framed. or as it may be hereafter extended or amended, to the fullest extent necessary to preserve its said charter and protect the rights of its stockholders."

In considering the effect of the language of the leases from these companies respectively to the Central Railroad, and what relation was created between the lessors and the lessee, we may compare the lan-

guage of these leases with that of the Georgia Railroad & Banking Company to William M. Wadley, predecessor in interest of the Louisville & Nashville Railroad Company and the Atlantic Coast Line Railway Company. The language of the Georgia Railroad & Banking Company's lease, which was under consideration in the case of Louisville & N. R. Co. v. Wright (D. C.) 199 Fed. 454, is as follows:

"Hath rented and farmed out to said party of the second part and his assigns, and does by these presents rent and farm out to said party of the second part and his assigns for the full term of ninety-nine years from the first day April, one thousand eight hundred and eighty-one, all its privileges, general and exclusive, of transporting persons, merchandise, produce and every kind of property whatsoever, which is or may become the subject of railroad transportation, over the lines of railroad owned and controlled by the party of the first part, to the full extent that the party of the first part has and enjoys, or is now entitled to have and enjoy, or may hereafter acquire the right to have and enjoy, such privileges, and subject to all the obligations and duties imposed by its charter in this behalf upon the party of the first part.

"And the party of the first part has also rented and farmed out, and does by these presents rent and farm out, to the party of the second part for the aforesaid term of ninety-nine years, as the means of full enjoyment of the privileges hereinbefore rented and farmed out, the following property, to wit:

"The Georgia Railroad from Augusta to Atlanta, and its branches, viz., the branch from Barnett to Washington; the branch from Camak to Warrenton, and the branch from Union Point to Athens, with all the extensions thereof which may be made hereafter to other points; also the Macon & Augusta Railroad, from Warrenton to Macon; together with the rights of way, roadbeds, depots, stations, warehouses, elevators, workshops, wells, cisterns, water tanks, and other appurtenances of said railroad and branches."

It is conceded that it has been held by the Supreme Court of Georgia in the case of the Augusta & Savannah Railroad, and by the Supreme Court of the United States in the case of the Southwestern Railroad Company, that the provisions in the charters of these companies with reference to taxation, as given above, constitute inviolable and irrepealable contracts between the state and the railroads. Railroad v. State, 54 Ga. 401; Railroad Co. v. Georgia, 92 U. S. 676, 23 L. Ed. 757. The case of Louisville & N. R. Co. v. Wright, supra, was carried by appeal from this court to the Circuit Court of Appeals for this Circuit, and the decision of the District Court was affirmed. The effect of the lease by the Augusta & Savannah Railroad and the Southwestern Railroad Company of their property to the Central Railroad & Banking Company on their right to have the scheme of taxation provided for in their charters continued to them and thereby exempt them from any other taxes. This case of Louisville & N. R. Co. v. Wright should be controlling here. It was there held that the lessee did not take any estate for years, but came within the statute of Georgia creating the relation of landlord and tenant, and became tenant with the mere right of possession, use, and operation, any taxable interest or other estate subject to taxation remaining in the lessor. There was in the Georgia Railroad Case certain property which, it was held, did not come within the ruling thus made, but that would not affect the question here. There is no material difference between the language used in the Georgia Railroad & Banking Company's lease and the leases now under consideration sufficient to differentiate the latter from the former, so that it may be assumed that the relationship originally existing, after

the execution of these leases, between the lessors and lessee in the case now before the court, was the same which it has been held by this court and the Circuit Court of Appeals existed between the lessor and lessee of the Georgia Railroad.

In addition to this, the question of the effect of the lease of the Augusta & Savannah Railroad was before the Supreme Court of Georgia in Goldsmith, Comptroller General, v. Augusta & S. R. Co., 62 Ga. 468, 472, and in that case the court held, the opinion being by Jackson, Justice, as follows:

"It is said, however, that the road is leased to the Central Railroad for a certain sum, and that this sum is the gross income, the only income that the company receives, and therefore the gross income. The act authorizing the lease does not touch taxation. The state does not alter its power to tax as in the charter expressed. Can the two companies alter that rule of taxation fixed in the charter of one of them without the state's assent? Clearly not, for then they might reduce it to a mere nominal sum and fritter away the tax rate reserved in the charter to little or nothing. The security for the tax due the state is this road and its appurtenances; the tax reserved is the per centum on its gross income; that income is what passage money and freights this road makes each year; of that an account must be rendered, and on that the per cent. must be estimated."

This case went off in the Supreme Court on the ground that the superior court had no jurisdiction to entertain the affidavit of illegality, but the language of the court is quoted to show the view it apparently entertained, that the lease of the road did not affect the question of taxation.

In Goldsmith, Comptroller General, v. Southwestern Railroad Co., 62 Ga. 495, while the case went off on the ground that no proper return had been made by the railroad such as required by the act of 1874 as a condition precedent to remedy by affidavit of illegality in the superior court, and that the court had no jurisdiction to entertain such an affidavit, the opinion of the presiding judge in the superior court is quoted in the decision as follows:

"This case having been referred to me by consent for determination upon the law and facts, it is, after argument, considered and adjudged that the partial immunity from taxation granted in the charter of the Southwestern Railroad Company, as well as that to the Muscogee Railroad Company, in its charter, continues unaffected by merger or lease. I further hold that the extent of this immunity has not been decided by the Supreme Court, but is still an open question."

The use of the last sentence by the court refers to the matter undetermined at that time as to what particular lines of the Southwestern Railroad this partial immunity from taxation covered.

In the case of Wright, Comptroller General, v. Southwestern R. Co., 64 Ga. 783, 794, the court, again speaking through Jackson, Justice, said:

"We hold that it (the Southwestern Railroad) had the right of relief in equity. First, because exactions are pressed upon it, in the form of annual taxes, inconsistent with and violative of its charter rights, and destructive of its franchise; secondly, because the executions might be repeated if these are successful, and suits and costs multiplied."

In the opinion in this last case reference is made to the fact that there is a lease by the Central Railroad & Banking Company of the

Southwestern Railroad, and it is said that, while the Central Railroad & Banking Company may be bound by its contract with the South-, western Railroad Company to pay the taxes, still that does not release the Southwestern from its obligation to the state for those taxes.

The conclusion must be that prior to the receivership proceedings instituted in 1892 in the Circuit Court of the United States for the Southern District of Georgia the right to the limited scheme of taxation provided in their charters remained in the Southwestern and the Augusta and Savannah Railroads, notwithstanding the leases of the two roads to the Central Railroad & Banking Company.

[2] It appears from the record here that, on March 4, 1892, all of the property and assets of the Central Railroad & Banking Company of Georgia, including its system of railroads and its leasehold interest in the Augusta & Savannah Railroad and in the Southwestern Railroad, passed into the hands of receivers of the Circuit Court of the United States for the Southern District of Georgia.

It further appears that on June 30, 1893, the said receivers being then in possession of the leaseholds of the Augusta & Savannah Railroad and said Southwestern Railroad, and operating the same under the said leases, the receiver was directed by the said Circuit Court of the United States for the Southern District of Georgia to ascertain whether they desired to permit their properties to remain in the hands of the receiver, as representing the lessee company, with the right on the part of said corporations, or either of them, to claim the net results of the operation of their respective properties up to the rental contract, but not beyond, or whether the said respective corporations should receive from the receiver the surrender of the leasehold interests held by him as receiver of the Central Railroad & Banking Company of Georgia, and the court further ordered that, if any of the said companies should make known their option to receive the surrender of the leasehold interest, the said receiver should apply to the court for an order authorizing and directing the surrender of the same, or, should any of the said companies elect to permit the said leasehold interests to remain in the hands of the receiver, said companies should have the right to claim from said court the net results of the operations of their properties by the receiver up to the rental contract price and no more, unless the receiver should, under the order of the court, elect to retain said leasehold interests, and to pay therefor the rental contract price. The Augusta & Savannah Railroad and the Southwestern Railroad Company both elected to permit their respective properties to remain in the hands of said receiver under this order, and the receiver operated said railroads from said date to November 1, 1895, and paid to the Augusta & Savannah and the Southwestern Railroad Company, respectively, the net earnings of their lines of railroad, which in neither case was as much as the rental stipulated for under the respective leases.

It further appears that all of the properties and assets of the Central Railroad & Banking Company of Georgia were sold under foreclosure decrees, and at judicial sales, and were, for the most part, purchased by Samuel Thomas and T. F. Ryan, who had put forth a plan of re-

organization for the acquirement of the properties and assets of the Central Railroad & Banking Company of Georgia, and organized a new company to be known as the Central of Georgia Railway Company, to take over the railroads and properties purchased by them under said reorganization plan. And then it appears that among the assets and properties so sold and purchased were the leasehold interests of the Central Railroad & Banking Company of Georgia in the Augusta & Savannah Railroad and the Southwestern Railroad Company, and possession of the railroads and properties of these companies was delivered by the receiver on the order of the purchasers to the Central of Georgia Railway Company on November 1, 1895.

In the letter of the Comptroller General to the President of the Central of Georgia Railway Company he says this:

"I am advised that these roads (referring to the Augusta & Savannah and the Southwestern Railroads) have been purchased by the Central of Georgia Railway Company at judicial sale under decree of foreclosure against your immediate predecessor in title and under leases in perpetuity."

It is urged, therefore, as I understand the argument, that the title to these roads passed by this judicial sale was changed by reason of the receivership and proceedings thereunder and the official sale, so that the title to this property became vested in the Central of Georgia Railway Company. I am unable to see that that is the result of that proceeding. All that went into the hands of the receivers of the Central Railroad & Banking Company, according to the record here, were the leasehold interests in the Augusta & Savannah and in the Southwestern. Nothing could have been administered in the receivership case or sold in that case beyond the interest in these two roads that went into the receivers' hands, and that, as stated, was the leasehold interest. These two lessor railroads, having the scheme of limited taxation provided for in their charters, and having, by authority of the Legislature, made the leases in 1862 and 1869, respectively, the fact that their lessee was placed in the hands of receivers and its property administered could not in any way affect the rights of the lessors with reference to taxation. They have their scheme of taxation by authority of the Legislature, they made the leases by authority of the Legislature, and the misfortune of the lessee company and the action of the court with reference to it could not, it seems to me, affect the rights granted these lessor companies by the Legislature of the state.

On October 17, 1895, the Central of Georgia Railway Company was incorporated under the general railroad incorporation act of 1892, and the acts amendatory thereof, with all the rights, powers, privileges and immunities enjoyed by the Central Railroad & Banking Company of Georgia under its original charter and amendments thereto, and with all the rights, powers, privileges, and franchises provided in the laws of Georgia and particularly by the act of December 17, 1892, and acts amendatory thereof, and the said petitioners, under said charter and the provisions of the said act under which they were incorporated, were substituted for the original stockholders of the said Central Railroad & Banking Company of Georgia. The said petition for incor-

206 F.—8

poration specified particularly that the said Central Railroad & Banking Company of Georgia was endowed with corporate capacity and power under the above-mentioned act of January 22, 1852, to lease and work the Southwestern Railroad, the Augusta & Savannah Railroad, and all other lines of railroad connecting with its own. On October 24, 1895, the Augusta & Savannah Railroad entered into a contract with the Central of Georgia Railway Company, whereby the lease of its railroad to the Central Railroad & Banking Company was modified and renewed to the Central of Georgia Railway Company, the said renewed and modified contract running from the 1st day of November, 1895, for the full term of 101 years, and renewable in like periods upon the same terms forever, the right of renewal to be in conformity to the laws authorizing it, and for the period that the corporate existence of the lessee may be continued.

This lease provides that the lessee shall pay "all federal, state, county or municipal taxes and assessments, ordinary or extraordinary, then resting or thereafter to be lawfully imposed upon the lessor or its property under its charter and the Constitution and laws of the state of Georgia." The lease provides for the annual rental of $51,145, to be paid semiannually. It is then provided that:

"The said lessee hereby further covenants and agrees to keep in as good order and repair as when it shall receive possession and control of the same, the said lessor's railroads and other property and appurtenances, and in case it shall fail to pay any semiannual amount of the rent as hereinbefore fixed, on the first day of January or July in any year for the space of six months after the same shall become due and payable as hereinbefore provided, and be demanded by the lessor, it shall then be lawful for the board of directors of the said lessor to terminate this lease and enter upon and resume possession of said railroad with the appurtenances and all other of its property hereby demised, and from thenceforth this indenture and the estate, rights and privileges hereby granted and every clause and article herein contained shall cease, determine and be void. And the said lessee will thereupon deliver immediate and peaceable possession to the said lessor of said railroad and other property and appurtenances hereby demised in as good order as it received the same, replacing such as shall have been consumed by use or otherwise disposed of with other similar property of equal value."

On October 17, 1895, the Southwestern Railroad Company entered into a contract with the Central of Georgia Railway Company whereby the lease of its railroad to the Central Railroad & Banking Company of Georgia was modified and renewed to the Central of Georgia Railway Company, the said renewed and modified lease running from the 1st day of November, 1895, for the full term of 101 years, and renewable in like periods upon the same terms forever, the right of renewals to be in conformity to the laws authorizing it, and for the period that the corporate existence of the lessee may be continued.

This lease also provided that the lessee should pay all taxes, as in the lease of the Augusta & Savannah Railroad. It also provided for an annual rental of $259,555, which was to be paid semiannually. The lease contained the same language, substantially, as the lease of the Augusta & Savannah Railroad above referred to as to the effect of the nonpayment of rent, and the termination of the lease and the right of the lessor to enter for that reason.

These new leases cannot in any way affect the right of the Augusta & Savannah Railroad and the Southwestern Railroad Company to the scheme of taxation provided in their charters. The rights of the Central Railroad & Banking Company either passed by these judicial sales into the purchasers who organized the Central of Georgia Railway Company and thus into the latter company or the effect of the sale was to terminate the leases and put these properties and the right to the possession and control of them in the two lessor companies. In either event there was no reason why the two lessor companies should not either renew their leases with the Central Railroad & Banking Company to the new company or make new leases to the new company; the point about the whole thing being that this right to the scheme of taxation provided for in the original charters remained all the time in the Augusta & Savannah Railroad and the Southwestern Railroad Company. The fact that the lessee company in the original leases and in these new leases was to pay such taxes as the lessor companies might owe the state could not in any way affect the rights of the lessor companies. That was simply an arrangement between the lessors and the lessee for reasons which controlled them in making the contract.

The taxes now assessed against the two railroads, the Augusta & Savannah and the Southwestern, are assessed against the Central of Georgia Railway Company as the property of that Company. These assessments speak of the properties in making the assessment as "that portion of its property known in its system of railroads as the Augusta & Savannah Railroad," and "that portion of its property known in its system of railroads as the Southwestern Railroad." The assessments are against the Central of Georgia Railway Company as the owner of the property, and there is no attempt to assess it for a leasehold estate or anything else in connection with these two properties, it appears, except upon the theory and idea that the Central of Georgia Railway Company has acquired the title by reason of the various things above set forth to these two properties. This cannot be true under any view of the matter. Under the authority of the Georgia Railroad & Banking Co. Case the relation of landlord and tenant only would exist; that is, the right on the part of the Central of Georgia Railway Company to possess, control, and operate the property of the Augusta & Savannah Railroad and of the Southwestern Railroad Company.

But, even if it be conceded that the Central of Georgia Railway Company has a leasehold interest in this property, as distinguished from a mere tenancy, it would not be the owner of the property, having the title thereto as against the Augusta & Savannah Railroad and the Southwestern Railroad Company. There has been no legislative action on this subject; it is simply the conclusion of the Comptroller General that the ownership of the two roads has passed to the Central of Georgia Railway Company. The Comptroller General has been accepting taxes from these roads since 1895, as before, in accordance with their charter scheme of taxation. This action of the Comptroller General in accepting taxes on income, in accordance with the charters of the roads, while no estoppel against him, may be considered by

the court as at least "persuasive authority" as to the proper method of taxation. L. & N. R. Co. v. Wright (D. C.) 199 Fed. 454–459. I do not understand that the effect of these leases as they now stand, being for 101 years subject to renewal, distinguishes them materially from that in the Georgia Railroad & Banking Company Case. There is no attempt here to tax any leasehold interest in these two properties, or any other right therein, against the Central of Georgia Railway Company otherwise than as the owner thereof. If an ad valorem tax can be collected against the Central of Georgia Railrord Company as the owner of the two other roads, it would place an additional burden upon the Augusta & Savannah and the Southwestern inconsistent with their charters, which have been held by repeated decisions controlling in the matter, to be irrepealable contracts between these railroads and the state, and violative of their rights under their charters. It is clear that whatever rights the state has, if any, against the Central of Georgia Railway Company in connection with these two railroads, to pay taxes otherwise than as provided in the charters of the two companies, must be enforced in some other way than that proposed here. It cannot be done by assessing the entire value of these railroads for taxes against the Central of Georgia Railway Company as its property.

In view of the foregoing, it is evident that the proposed action of the Comptroller General would result in the impairment of the obligations of the contracts between the state and the Augusta & Savannah Railroad and the Southwestern Railroad Company. This being true, the plaintiff is entitled to the relief asked.

The question is not presented here, as in the Georgia Railroad Case, of certain property being outside of the scheme of taxation provided in the original charters. There is a statement of the manner in which the aggregate value of these two roads was arrived at, but there is nothing to show any property added by the Central Railroad & Banking Company or the Central of Georgia Railway Company which might be taxable, and no facts on which to act in this respect. No opinion is expressed as to whether or not there is something in the way of a leasehold interest or otherwise in these roads, subject to taxation against the Central of Georgia Railway Company as not being within the scheme of taxation contained in the charters. In the case as here made, however, the complainant is entitled to a decree.