City Council of Augusta vs. Georgia Railroad and Banking Co.

---

THE CITY COUNCIL OF AUGUSTA, plaintiff in error, vs. THE GEORGIA RAILROAD and BANKING COMPANY, defendant in error.

The City Council of Augusta, imposed a tax on the banking part of the capital of the Georgia Railroad and Banking Company, and a tax on the real estate of the company, situated in Augusta.    The charter of the company, con-

tains a provision in these words. "The stock of the said company and its branches, shall be exempt from taxation for and during the term of seven years, from and after the completion of the said Railroads or any of them; and after that, shall be subject to a tax, not exceeding one-half per cent. per annum, on the net proceeds of their investments'"

*Held,* That the taxes were illegal.

In equity, in Richmond Superior Court. Decision by Judge HOLT, at November Term, 1858.

This was a bill filed by the Georgia Railroad and Banking company, to enjoin and restrain the City Council of Augusta from enforcing and collecting certain tax executions, issued against complainant.

The bill alleges that complainant was incorporated a body politic and corporate, by an Act of the General Assembly of the State, passed 21st December, 1833, by the name of "The Georgia Railroad Company," with a provision or stipulation inserted in the Act of incorporation, that *"The stock of the said company and its branches, shall be exempt from taxation for and during the term of seven years from and after the completion of the said Railroads or any of them; and after that shall be subject to a tax not exceeding one-half per cent. per annum on the net proceeds of their investment."* The bill further alleges, that reposing with confidence in the provisions and stipulations in said Act, contained and especially in the favorable enactment as to taxation, a large number of persons proceeded to organize a company in accordance with the terms of said charter. The defendant in its answer, admits the organization of complainant, under said Act of incorporation, but deny all knowledge of the motives which influenced said persons in becoming members of said company and to make their subscriptions to the capital stock thereof, but that if said exemption entered into the consideration of the subscribers, it was a matter of minor importance, and that defendant, the City Council of Augusta, who was an original subscriber to the amount of two

hundred thousand dollars, was actuated by no such consideration.

It was further alleged in the bill, and admitted in the answer, that by the Act of 18th December, 1835, an amendment of said charter was made by the General Assembly of Georgia and accepted by the stockholders of said company, and the stock subscribed and paid for in conformity with the provisions of said amendatory Act, and the terms thereof complied with. ˙ This Act changed the name of the company to that of the Georgia Railroad and Banking Company ; increased the capital stock to two millions of dollars, authorized one half of said capital to be used for banking purposes, and not more, until the completion of the road to Athens, and one of the Southern branches through Greensborough ; at which time any capital stock unemployed may be used for banking purposes ; one-fourth of the stock .applied to banking purposes to be paid in gold or silver coin.   That it was provided and enacted " that the Act to which this is an amendment, shall be and remain in full force and effect in every section and clause thereof, except where it conflicts with the provisions of this.(the amendatory) Act."

It was further alleged in the bill, that there was a further amendment of the charter, 25th December, 1847, authorizing the Georgia Railroad and Banking Company, to increase their capital to an amount not exceeding four millions of dollars, either by assessment on existing shares, by new subscriptions, or by issuing stock for the excess of the cost of the road over the (then) present capital, or by all of these means : with a proviso, that said amendatory Act, shall not authorize an increase of banking capital. Thus this amendment contained no provision repealing the exemption from taxation which was contained in the original Act ; and that said amendment was accepted by the stockholders with this express understanding, which was acquiesced in by the State and its officers.

To these allegations defendant answered, that said Act

654 SUPREME COURT OF GEORGIA.

City Council of Augusta vs. Georgia Railroad and Banking Co.

contained no clause, expressly repealing the exemption from taxation, but denied that said amendment was accepted with any such understanding as alleged, or that such understanding was acquiesced in by the State or its officers.

It was admitted by counsel for complainant and for defendant, that the Act of 20th December, 1849, was not accepted by complainant as a part of its charter. The material parts of said Act are as follows:

*An Act to amend the several Acts in relation to the Geoagia Railroad and Banking Company. Approved Dec. 20, 1849.*

SECTION 1. *Be it enacted, &c.* That the Georgia Railroad and Banking Company shall be allowed to increase their capital to a sum not exceeding five millions of dollars, upon such terms, limitations and conditions as the stockholders thereof, in convention, shall determine: *Provided always,* That the banking capital of said company shall not be increased beyond the amount now authorized by their charter, namely, one million of dollars.

SEC. II. *And be it further enacted,* That the Georgia Railroad and Banking Company shall be, and they are hereby authorized to subscribe for and hold in the Nashville and Chattanooga Railroad Company of the State of Tennessee, stock to the amount of two hundred and fifty thousand dollars or any less amount upon the terms and restrictions contained in the charter of the said last mentioned company, or such other as may be agreed on.

SEC. III. *And be it further enacted,* That the power heretofore granted to the Georgia Railroad and Banking Company, of constructing a branch of their road to Washington, in the county of Wilkes, be and the same is hereby revived and authorized to be exercised by said company; *Provided,* That the amount of the increased stock of said company

shall not be exempted from the taxation, as is secured to the present stock by the latter clause of the 15th section of the charter of said company, but shall be subject to such tax as the Legislature may hereafter impose.

It was alleged in the bill and admitted in the answer, that another Act, amendatory of complainant's charter, became a law on the 21st January, 1852, the material parts of which are as follows: .

*An Act to authorize the consolidation of the stocks of the Georgia Railroad and Banking Company and of the Washington Railroad or Plank Road Company, incorporated, February the fifth, eighteen hundred and fifty, and for other purposes.  Approved January 21, 1852.*

SEC. I. *Be it enacted by the Senate and House of Representatives of the State of Georgia in General Assembly met, and it is hereby enacted by the authority of the same,* That the Georgia Railroad and Banking Company and the Washington Rail or Plank Road Company be authorized and empowered to consolidate their stocks, the said Georgia Railroad and Banking Company issuing stocks in their said company to the stockholders of the Washington Railroad or Plank Road Company, on terms of equality with the general stockholders in amount equal to the amount held by them respectively in the stock of the Washington Railroad or Plank Road Company, and that the two companies aforesaid, after the consolidation of their stocks, shall be known as one corporate body, under the name and style of the Georgia Railroad and Banking Company, and that said corporate body shall be authorized to exercise all the powers and privileges conferred by existing laws upon the Georgia Railroad and Banking Company, and be under all the liabilities and restrictions imposed on the same.

SEC. II. *And be it further enacted by the authority of the same,* That all laws and parts of laws militating against this Act, be and the same are hereby repealed.

It was alleged in the bill, that for " some years after the grant of said amendment, authorizing the exercise of banking privileges by your complainant, no specific amount was set apart for banking purposes, though the amount thus used was kept within the restriction of the law, but subsequently the board of direction of your orator placed a resolution upon their minutes, by which it was determined that not more than five hundred thousand dollars should be employed for such purposes, which direction of the board has never been changed ; but the capital so employed is only this proportion of the whole capital stock, and is appropriated therefrom according as the exigencies and general business of the company render it convenient and desirable." These allegations of complainant's bill were admitted in defendant's answer with this additional statement, that said order or resolution of said directors was passed long prior to the year 1854.

It was admitted by counsel for the complainants and for the defendants that " A full tax of one-half of one per cent. on the net income of the company (the complainants) was paid by the complainants for each of the years 1854, 1855, 1856 and 1857, to the Treasurer of the State, and the tax, which the defendants propose to assess, would be an additional tax."

It was alleged in the bill that " The City Council of Augusta, a body. politic and corporate, resident in said County and State, deriving authority from the Legislature of said State to make and enact all necessary ordinances, rules and regulations for the good government of the city of Augusta, in said County and State situated, and for the raising of revenue for the same (the said ordinances not being inconsistent with, or repugnant to the Constitution and Laws of said State) has pretended and does pretend that it is entitled to levy a tax upon the property of your orator, by virtue of its said authority, over and above or in addition to that which your orator has paid as aforesaid specified ; and, in ac-

City Council of Augusta vs. Georgia Railroad and Banking Co.

cordance with said pretence, has directed the Clerk of said Council to issue executions against your orator, the first of which has been issued ostensibly for 1854, upon an assessment of the banking capital of your orator, (as is pretended, that is to say, th~ sum of five hundred thousand dollars,) of one-half of one per cent, amounting in the whole to two thousand five hundred dollars, with damages of two hundred and fifty dollars and three dollars costs."

The bill sets forth three other executions of similar character, for the years 1855, 1856 and 1857, but for various sums amounting, in the aggregate, to the sum of fourteen thousand six hundred and eighty-five dollars, besides costs. It is also stated in the bill that said executions have been levied by the proper officer upon the banking house and lot of complainants in Augusta, and that said officer is proceeding to sell the same.

The bill further alleges that the City Council of Augusta and the officers thereof have not complied with the law and the ordinances of said City Council, under which they profess to act; that they have never demanded said tax in terms of said ordinances of said complainants, so as to authorize them to collect said tax, or damages thereon; that no such a return has been made, during the years for which said executions have been issued, by the Collector and Treasurer of said City Council, of the complainant as a defaulter in not paying such tax, as authorized the said City Council to issue said executions; that the said City Council has never taken action on any such return, directing the tax to be collected by execution; and that they never did, before the year 1857, give notice to complainants' officers of any intention to claim said tax.

To all these allegations the defendants, the City Council of Augusta, in their answer to said bill, say that they " admit that they are a municipal corporation, deriving their authority, and rightfully exercising the powers alleged; that the complainants own, in addition to the banking capital afore-

said, which is employed in the city of Augusta, a large amount of real estate and a great many slaves, of great value; that by the charter of these defendants, they are authorized and empowered to make and establish any and every "by-law or regulation that shall appear to them requisite and necessary for the security, welfare and convenience of the said city, or for preserving peace, order and good government within the same," and are also "vested with full power and authority to make such assessments on the inhabitants of Augusta, or those who hold taxable property within the same, for the safety, benefit, convenience and advantage of the said city, as shall appear to them expedient;" that the banking capital and real and personal property of complainants aforesaid, are used and employed in the city of Augusta and are taxable property; that complainants receive and enjoy all the advantages, protection and benefit, which are afforded by the police arrangement and other municipal regulations of the city of Augusta, and should pay their just proportion of the expense thereof; that, in the exercise of their legislative power, these defendants have assessed a tax upon the banking capital and real estate of complainants, lying in said city of Augusta, are now proceeding to levy and collect the same in the manner alleged by complainants, in strict conformity with the ordinances of said city; that the amounts of said tax executions are correctly stated, but that the first one alone is for tax upon banking capital only; the others being for tax upon banking capital and real estate.

These defendants, further answering, deny that they have not complied with prerequisites of law and of the ordinances of said City Council, under which they profess to act; deny that they have not made a proper and legal demand for said taxes of complainants, and insist and say that all legal and proper returns have been made, so as to authorize the issuing of said executions; and also insist and say that all proper

and legal action has been had by said City Council to authorize said executions to proceed, and they deny that notice of an intention to claim said tax was not given to the officers of complainants before the year 1857.

They admit that complainants have made application to them and requested them to desist from the collection of said taxes, which requests these defendants have declined to comply with, insisting that they were and are in the exercise of a clear legal right. These defendants, further answering, say that on the first day of February, eighteen hundred and fifty, an Act of the General Assembly of said State was approved and became a law, which Act is entitled, "An Act supplementary to the general tax laws, and to tax certain property therein mentioned, which has been heretofore exempt from taxation;" that by the fifth section of said Act it was provided "That no banking capital employed by the Georgia Railroad and Banking Company, shall, by any construction of this Act, be exempt from future taxation at the discretion of the Legislature, and the tax on net profits shall only be on net profits of the railroad." These defendants insist that, if the exemption from taxation claimed by complainants existed down to the time when said last mentioned Act became a law, it was then finally repealed and revoked, and that the general city ordinance, passed on the twenty-fifth day of February, 1852, was of force and operated upon the complainants."

So much of said last mentioned Act as is material, is as follows:

*An Act supplementary to the general tax laws, and to tax certain property, therein mentioned, which has been heretofore exempt from taxation. Approved February 1, 1850.*

SECTION I. *Be it enacted, &c.* That the President of the Georgia Railroad shall, on or before the thirty-first day of December, 1850, pay into the Treasury of this State, as a tax for the year 1850, on oath, one-half of one per cent. on the

net annual income of the stock of said road and its branches, under penalty of double tax for his refusal or neglect to do so, to be collected by execution to be issued by the Treasurer.

SEC. II. *And be it further enacted*, That the increase of capital of the Georgia Railroad and Banking Company, authorized by the Act of the present session of the General Assembly, be and the same is hereby taxed thirty-one and a quarter cents on every hundred dollars worth.

(Sections three and four relate to other railroad companies.

SEC. V. *And be it further enacted*, That each and every of the Presidents of the aforesaid railroad companies shall make like payments on the thirty-first day of December in each and every year hereafter until this Act shall be repealed; *Provided*, that no banking capital employed by the Georgia Railroad and Banking Company, and the Central Railroad and Banking Company, shall by any construction of this Act, be exempt from future taxation at the discretion of the Legislature, and the tax on net profits shall only be on the net profits of the Railroad.

Upon the bill, answers and admissions hereinbefore stated, and the further admission (made for the purposes of that argument only) that "no return was made by complainant to the Clerk of Council as a tax payer in terms of the ordinance." No replication having been filled, and the cause not having been set down for trial, and not having been submitted to a jury, a motion was, by consent, made by complainant's counsel that an injunction issue, which motion was allowed by His Honor, the Judge, and an injunction ordered to issue to restrain the defendants from pressing said executions, to which decision and order the defendants, the City Council of Augusta, by their counsel, then excepted and now except, and assign error thereon, and tender this bill of exceptions within thirty days of the adjournment of said Court, (which occurred on the 3d day of December,

1858,) and pray that the same may be signed and certified according to law.

MILLERS & JACKSON, Attorneys for the City Council of Augusta.

HON. E. STARNES, *contra.*

*By the Court.*—BENNING, J. delivering the opinion.

Did the City Council of Augusta have the power to tax, as they did, the banking capital of the Georgia Railroad and Banking Company, and the real estate of that company, lying in Augusta? If the Council had, it is clear, that the granting of the injunction to prevent the collection of the tax was improper.

The Council, it is obvious, did not have this power, if it was a power, the exercise of which, would come in conflict with the charter of the company. And the company insists, that the exercise of such a power, would come in conflict with a part of their charter, viz: this part: "The stock of the said company and branches, shall be exempt from taxation, for and during the term of seven years, from and after the completion of the said Railroads, or any of them; and, after that, shall be subject to a tax, not exceeding one-half per cent. on the net proceeds their investments." (15 *section of char.*) Is the company right in this? That, of course, depends on what this part of the charter means.

1st. And we think that it means, first, that the stock of the company, was to be subject to a tax, but not, to any tax exceeding one-half of one per cent. on the net proceeds of its investments.

Such, we think, the natural import of the words; and words, even in the charter of a corporation conferring valuable franchises, are commonly to be taken according to their natural import.

It must be true, that the Legislature intended to restrict the taxing power, or, that it did not. If it be the former that is true, the words, "shall be subject to a tax not exceeding one-half per cent on the net proceeds of its investments," were useful; if it be the latter that is true, those words are useless, and worse than useless; useless, because in the absence of all words, the taxing power would have stood unrestricted, it requiring words to restrict that power; worse than useless, because the words are at least of a character, to raise a strong doubt, whether the Legislature did not intend to restrict the taxing power. This being so, can it be that the Legislature would have used any words, at least, can it be, that the legislature would have used such words as these, if it had not been its intention to restrict the taxing power?

The Legislature interprets the words as giving this exemption.

In the Act of 1849, amendatory of the Acts, relating to the company, there is this proviso; "that the amount of the increased stock of said company, shall not be exempted from the taxation, as is secured to the present stock, by the latter clause of the 15th section of the charter of said company, but shall be subject to such tax as the Legislature may hereafter impose."

In 1850, there was passed another Act which had this title; "An Act supplementary to the general tax laws, and to tax certain property therein mentioned, which has been heretofore exempt from taxation."

This Act also, had this proviso; "that no banking capital employed by the Georgia Railroad and Banking Company, and the Central Railroad and Banking Company, shall by any construction of this Act, be exempt from future taxation at the discretion of the Legislature, and the tax on net profits shall only be on the net profits of the Railroad."

2d. We think, that this part of the charter means, secondly, that the stock of the company, as stock; as a unit; is

alone what is to be subject to the tax; not parts of the stock as the part used in banking, nor the particulars in which the stock consists; as, the land, cars, rails, &c.

The words seem to require this meaning: " The *stock*" " shall be subject to a tax." So, certainly, do several obvious considerations of convenience. And stock, as stock, is that on which, the State tax is, always, I believe, levied; so there is analogy too.

3d. We think, that this part of the charter, means, thirdly, that this tax to which, the stock is to be subject, is to be a tax to be laid by the *State ;* not a tax to be laid by a municipal corporation, unless there has been granted to such corporation, a special power to lay the tax instead of the State.

Stock either, as being an abstraction, has no locality ; or it has the locality of its owner; or it has the locality of the particulars of which it consists; or it has the locality of the business it begets; and whichever of these things it be that is true, it cannot be, that Augusta is the locality—the residence, so to speak, of the stock of this company ; as well may it be that Atlanta, or any of the intermediate points are.

The taxing power of the City Council of Augusta, is, a " power and authority to make such assessments on the inhabitants of Augusta, or those who hold taxable property within the same;" " as shall appear to them expedient." This is a power confined to " inhabitants," or, to property " within the city." Therefore, it cannot extend to this stock, as, it cannot be said, that this stock is " within" the city.

What is thus true of Augusta, is, doubtless, true of Atlanta, and of the intermediate places.

If then the power is one not to be exercised by any of these municipal corporations, for this defect of locality or residence, it follows, that it must be a power, to be exercised by the State alone.

Could anything else have been the intention ?

If it was the intention, that this was to be a power to be exercised by Augusta, so, equally, must it have been the in-

City Council of Augusta vs. Georgia Railroad and Banking Co.

tention that it was to be a power to be exercised by Atlanta, and the intermediate points. It is not a supposable case, that the intention was, that the power was to be one to be exercised to the *full*, by each, and all of these corporations. It is little less supposable, that the intention was, that it was to be a power to be exercised by them, in separate shares, for there was nothing said or done, by which, to ascertain the shares. There was no apportionment of the power. It is fair to conclude, therefore, that the intention was that the power to impose this tax was to be a power to be exercised by the State alone.

And there are reasons why the power ought to be lodged with the State, exclusively. These will readily occur.

We think, then, that the charter means these three things.

Stock it is, in reference to which, the charter means these things. " The stock of the company" " shall be subject," &c.

Is the banking part of the stock, included in this expression, " the stock of the company ?" We think so. That part is stock, and stock of the company. The use to which it is put, cannot deprive it of its quality of stock, and stock of the company. Besides, it appears from the bill, that there is no particular portion of the stock, set apart and separated from the rest, permanently, to bank on, but that the banking is done on such part, as, at the time when stock is needed for banking, may be in hand in the form suited to banking.

This too, is the legislative interpretation, as will be seen by referring to what I have already quoted from the Act of 1850, and, I may say, what I have quoted from the Act of 1849.

We think, then, that the stock employed in banking, is to be considered as included in the expression, " the stock of the company," and therefore, that it, also, is entitled to the exemption.

It was argued, that if this was so at first, yet that it had been changed by the part of the Act of 1850, which I have

quoted. But we do not think so. That Act does not at all tax the banking portion of the stock, does not even declare it subject to a tax of any sort, it merely says, that no *construction* shall be put on itself, by which, *it* shall be made, to exempt that portion of the stock from taxation at the discretion of the Legislature.

It was also argued, that the Legislature had the power to disregard this exemption, and to tax the stock at discretion. It will be time enough to determine that question, when the Legislature imposes, or authorizes to be imposed, a tax exceeding that provided for by the charter. It had done nothing of the sort, when the taxes in question were laid by the City Council.

These being our views, it is plain, that they must lead us to the conclusion, that the taxes imposed by the Council, *were* in conflict with the charter; in conflict with each of the three meanings which we found in the charter. It is needless, *to* take time, *to* state the points, of conflict, as these must be apparent.

Consequently, we *think*, that the taxes were illegal, and therefore, that the Judge was right in enjoining their collection.

Judgment affirmed.