THE STATE OF GEORGIA, plaintiff in error, *vs.* THE GEOR-GIA RAILROAD AND BANKING COMPANY, defendant in error.

1. By the original charter of the Georgia Railroad and Banking Company it was, in terms, provided that " the stock of said company and its branches, shall be exempt from taxation for seven years from the completion of said railroads, or any one of them, and after that, shall be subject to a tax of not exceeding one-half of one per cent. per annum on the net proceeds of their investments:"

*Held*, that under the settled rules of construction, it was competent for the legislature to grant this exemption, and forming, as it does, a portion of the contract of incorporation, any repeal of it by the legislature, without the consent of the corporation, is in violation of article 1, section 10, paragraph 1 of the constitution of the United States prohibiting any state from passing any law impairing the obligation of contracts.

2. None of the acts of the legislature of this state which have been accepted by the Georgia Railroad and Banking Company, passed since the adoption of the Code, have brought said charter, so far as its investments in said road and its necessary incidents are concerned, within section 1636 of said Code of 1863.

3. The tax act of 1874, taxing the railroads of this state upon the property belonging to them, as other property of the citizens of this state is taxed, is, so far as the Georgia Railroad Company is concerned, as to its railroad and appurtenances, unconstitutional and void.

4. Bonds and other property of said company not forming any part of the railroad or its appurtenances, are subject to taxation as the property of other citizens.

Constitutional law.    Contracts.    Charters.    Tax.    Before Judge HOPKINS.    Fulton Superior Court.    October Term, 1874.

A report of this case unnecessary.

N. J. HAMMOND, attorney general; R. TOOMBS, for the plaintiff in error.

The State of Georgia *vs.* The Georgia Railroad and Banking Company.

W. H. HULL; HILLYER & BROTHER, for the defendant.

McCAY, Judge.

1. Were this a new question I should not hesitate to hold that it was not competent for the general assembly of this state to enter into any contract with the corporators of the Georgia Railroad and Banking Company, to exempt the corporation, permanently, from taxation, nor to fix a limit beyond which the corporation should not be taxed. It is a principle deducible from the nature of legislative bodies that one legislature cannot fix a limit to the legislative power of another and subsequent legislature. This only the people, in their sovereign capacity, can do. This is the object and the function of the constitution alone. If a mere legislative body can do this in one particular, why may it not do so in another? If, by a contract, a legislature may impose limits upon the power of a subsequent legislature to tax, why may it not by contract, limit also, its power to establish courts, regulate the mode of making private contracts, the making of wills, the descent of property, or any other of the legislative duties, cast by the constitution upon this branch of the government, established to conduct the affairs of the state? The taxing power is especially a duty, which, from the nature and necessity of it, it is of the utmost importance shall remain to each legislature intact, except as the people have, in their sovereign capacity, seen fit to restrict it. This power is the very life of the state—a necessity for its very existence, since we can never know what the future may have in store. And if, by contract, a legislature may stipulate that one man, or one corporation, shall enjoy either an entire or partial exemption from this necessary burden, where is the hindrance to the power of one legislature to grant, by contract, this exemption to a set of men, to the land owners, the railroad proprietors, or indeed, to any extent, either of persons or property?

In the early history of this country, before the subject was fully understood, and especially before the Dartmouth College

case, our legislatures, modeled as they were upon the pattern of the Parliament of Great Britain, were not so careful to scan the legislation they adopted, knowing that if evil consequences to the state should ensue, it was competent for a subsequent legislature to undo the knot by which the state was bound. But under the disability the decision in the Dartmouth College case puts upon the legislative power it now often happens that in a thoughtless hour the state, with but a nominal consideration, is shorn of its most important prerogatives. It becomes, therefore, of the greatest importance to inquire if there be no limit to this capacity of one legislature to bind another. Is the whole power of the people, the vital existence of the state, its whole legislative capacity, capable of being thus hampered, bartered away, sold to a corporation? Where is the limit? or is there none? Can it be that under that clause of the constitution of the United States which forbids a state from passing any law impairing the obligation of contracts, a state legislature has a power which enables it to put a final and conclusive limit to the legislative power of its successors? It seems to me that this question needs a reconsideration—that the decisions of the supreme court of the United States upon it, which it is admitted are definite and decided, are not sustainable upon principle, and not in harmony with other well-settled adjudications involving a view different from that taken by that high tribunal. The supreme court of this state, in *Hambrick vs. Rouse*, 17 *Georgia*, 56, held, in solemn argument, that it was not competent for one legislature to bind another not to authorize the removal of a county seat, and in *Daly vs. Harris*, 33 *Georgia*, (Supplement) no less a jurist and moralist than Judge JENKINS, says, governments are mere agencies established for the security of rights and the promotion of interests appertaining to the founders who, by common consent, have become the governed. To this end they have been invested with certain necessary powers, the exercise of which devolves upon different individuals, who, in the course of time, come successively to the government. If the depository of their powers for the pass-

ing hour, may aliene any one of them so as to deny itself and its successor the exercise of it, all of the others may be so aliened, and the result would follow that an agency established for specified ends, may, in its discretion, defeat those ends.    And in Ohio Life Insurance and Trust Company *vs.* Debolt, Judge TANEY says: "The powers of sovereignty confided to the legislative body of a state are undoubtedly committed to them as a trust, to be exercised to the best of their judgment for the public good; and no one legislature can, by its own act, disarm its successors of any of the powers or rights of sovereignty confided by the people to the legislative body, unless they be authorized to do so under the constitution under which they were elected.    They cannot, therefore, by *contract*, deprive a future legislature of the powers of imposing any tax it may deem necessary for the public good.    And in every question of this character the question must depend upon the constitution of the state and the extent of the power therein granted to the legislative body."    And Mr. Justice CATRON and CAMPBELL seem, by their opinions, to concur in this idea.    It must, however, be admitted that notwithstanding their views, as well as in spite of the decisions of some of the most respectable courts and judges of the state courts, the supreme court of the United States has, with tolerable uniformity, laid down and adhered to the doctrine that such an exemption is within the ordinary legislative discretion, that it may assume the shape of a contract, and when this is the case, that it is irrepealable unless expressly stipulated to the contrary: 7 Cranch, 164; 3 How., 133; 16 *Ibid.*, 389; 18 *Ibid.*, 331; *Ibid.*, 380; 4. Wal., 143.

2, 3. As the supreme court of the United States is a court of appeals from this court, on a question of this character, I feel bound to conform myself to its decisions, although, I feel it to be my duty to what I deem the truth, to express my dissent from the conclusions at which it has arrived.    On the authority of these decisions, we therefore decide that it is competent for the general assembly to contract, in the charter of a corporation, that it shall be exempt from taxation, or, as

in the charter of the Georgia Railroad Company, that its tax shall not exceed one-half of one per cent. on its earnings, and that having so contracted, without reservation, it is not competent for a subsequent legislature to violate the obligation of that contract by assessing a higher tax. Nor has there been any legislation accepted by the company since the adoption of the Code which puts this corporation on a footing with the Central and Southwestern Roads, so as that the terms by which it holds its franchises and exemption is a charter granted since the Code, and therefore capable of being withdrawn. Indeed, with the exception of the tax act complained of, there has been since 1863, no legislation looking to any general operation on the charter. The revenue of the bank charter is doubtless within the provisions of the Code making charters granted since its adoption, repealable. But there is nothing in the record showing that any portion of the capital is now engaged in banking, indeed, directly the contrary is stated. The banking seems to be solely on the credit of the company.

4. There seems to be no doubt that the stock issued under the amendment granted to authorize the Clayton branch, is within the clause. Such was the ruling of Judge HOPKINS, and we think he was right. As to the surplus kept on hand, or any investments not strictly within the enterprise contemplated in the charter, we are clear that this is taxable. The company is only exempt on the value of its road and its necessary appurtenances, and those appurtenances must be the ordinary and usual appurtenances of such an enterprise. Anything in the nature of an investment not within this scope, is not exempt. We would not inquire closely into the *status* of affairs on any particular day, as it may well be that it may have a surplus on hand for a special purpose. But even as a fund to meet contingencies, we think a permanent surplus invested, is not covered by the exemption in the charter.

Judgment affirmed.

WARNER, Chief Justice, concurring.

The act of 1868, to increase the capital and define the powers of the Georgia Railroad and Banking Company, as well as the act of 1870, to extend, continue and renew the banking privileges of said company, having been passed since the adoption of the Code of 1863, the state reserved the right in the grants made to the company in each of the aforesaid acts respectively, to withdraw the franchises granted, so far as to exercise her sovereign power of taxation as she has done by the act of 1874, and the passage of the latter act did not impair the obligation of her contract made with the company as prohibited by the constitution of the United States. The company is therefore liable to be taxed according to the provisions of the act of 1874, upon its increased capital stock authorized by the act of 1868, and upon its banking capital *employed* under its renewed grant, by the act of 1870, both grants having been made by the state and *accepted* by the company, in view of the public law of the state, as the same existed at that time. But as it does not appear from the record that the company *has employed any of its banking capital*, under its renewed grant by the act of 1870, the judgment of the court below should be affirmed.