**GEORGIA RAILROAD & BANKING CO. v. REDWINE, State Revenue Commissioner.**

**C. A. No. 185.**

United States District Court
N. D. Georgia, Newnan Division.

July 29, 1949.

Rehearing Denied Oct. 3, 1949.

750

SCARLETT, District Judge, dissenting.

Spalding, Sibley, Troutman & Kelley and Furman Smith, all of Atlanta, Ga., for plaintiff.

Eugene Cook, Attorney General of Georgia, and Claude Shaw, Assistant Attorney General of Georgia, for defendant.

Before McCORD, Circuit Judge and RUSSELL and SCARLETT, District Judges.

RUSSELL, District Judge.

This suit is another phase of litigation which has been presented to the courts by various proceedings, in various forms, for more than seventy years. Past litigation, and the present, centers around an exemption granted to the present complainant by the Act of the Georgia Legislature in 1833. Laws 1833, p. 264. Full reference to the facts and the questions ultimately involved need not be stated here except by reference to phases of the former litigation which are directly involved here, to-wit: State of Georgia v. Georgia Railroad and Banking Company, 54 Ga. 423; Georgia Railroad and Banking Company v. Wright, C. C., 132 F. 912; Wright v. Georgia Railroad and Banking Company, 216 U.S. 420, 30 S.Ct. 242, 54 L.Ed. 544; Musgrove v. Georgia Railroad and Banking Company, 204 Ga. 139, 49 S.E.2d 26.

In the present proceeding the complainant proceeds against Charles D. Redwine, State Revenue Commissioner of Georgia, to enjoin the assessment and collection of ad valorem taxes which is alleged would be contrary to the provisions of complaint's legislative charter, and thus impair the obligation of the contract. The complainant also seeks to enforce against Redwine, Revenue Commissioner, a previous decree of this Court entered in the case of Georgia Railroad and Banking Company v. Wright, Comptroller General, in 1907, 132 F. 912, supra.

The defendant has filed a motion to dismiss, presenting various questions, the one now primarily for determination asserting that the present suit is in effect one against the State of Georgia, and of which this Court has no jurisdiction because of the provisions of the 11th Amendment to the Constitution of the United States.

Complainant has moved for a judgment on the pleadings and for a summary judgment, and seeks to meet the attack of the defendant's motion upon the ground, principally, that as the result of participation by the Attorney General of Georgia in the former proceeding of 1907 the State waived its immunity from suit, and further, that the suit against the public officer to restrain the enforcement of an unconstitutional Act is not a suit against the State within the provisions of the 11th Amendment.

It seems proper to first consider the effect of the former adjudication of this Court in its decree of 1907 which restrained the defendant from assessing or collecting any taxes contrary to the terms of that decree. If bound thereby, the effect of the decree would require that the threatened asssessment and collection of taxes by the defendant be likewise now restrained. That proceeding adjudged the validity of the exemption now involved.

This former suit was between the present complaint, a corporation created under the laws of the State of Georgia, and "William A. Wright, a citizen of the State of Georgia." The defendant was represented by counsel who was the Attorney General of Georgia. He acknowledged service of the subpoena "William A. Wright, by John C. Hart, Attorney at Law and Attorney General for Georgia." However, the pleadings were signed merely by the named counsel as "Counsel for defendant" and the pleadings for the defendant were entered in the name of William A. Wright as an individual. However, the opinion of the Court designates the defendant as "Wm. A. Wright, Comptroller General of the state of Georgia." These references have been made to show that there is no clear course of designation or conduct which would lead to the conclusion without doubt that the respective parties considered the suit one against Wright in his official capacity and as a representative of the State, or whether he was proceeded against as an individual, to restrain an illegal act threatened to be consummated under color of office.

■ Without regard, however, to whether the defendant was sued in his individual or official capacity, it is conceded that he was the official of the State charged with the assessment and collection of the taxes in question and, counsel for the complainant, relying upon the principle ruled in Gunter v. Atlantic Coast Line R. Co., 200 U.S. 273, 26 S.Ct. 252, 50 L.Ed. 477, contends that the State in that proceeding waived its immunity from suit by participation in behalf of the defendant by the Attorney General of Georgia, and the tacit adoption of the litigation by a subsequent Governor in his message to the Legislature. To ascertain the validity of this contention it becomes necessary to determine the power of the Attorney General of Georgia, and perhaps of the Governor of the State also, to waive the immunity of the State from suit by participating in, or the utterance of statements concerning, litigation against a State officer which seeks to control his official acts. It is of course established that the State's waiver of immunity from suit, or its consent to suit, must be expressed by a statute. It becomes necessary then to consider the statutes of the State of Georgia.

The provisions of the statutes in effect at the time of the former suit, which more clearly than any other expresses the power of the Governor or Attorney General to consent to suit, are sections 23 and 220 of the Georgia Code of 1895, which provide:

Sec. 23. "When any suit is instituted against the State, or against any person, in the result of which the State has any interest, under pretense of any claim inconsistent with its sovereignty, jurisdiction or rights, the Governor shall, in his discretion, provide for the defense of such suit, unless otherwise specially provided for."

Sec. 220. "It shall be the duty of the attorney-general * * * to represent the

752

State * * * in all civil and criminal cases in any court when required by the Governor." 

As to suits against the Comptroller General, this officer was authorized "when the services of a solicitor-general are necessary in collecting or securing any claim of the State, in any part of the State; * * * to command the services of said attorney-general in any and all of such cases * * *." Section 222.

It will be observed that this statute has reference to "collecting or securing any *claim* of the State," and not broadly to defense of suits against the Comptroller General.

It may be noted that these are mere general directions for legal representation and do not form specifically a part of the tax collecting machinery provided by the Georgia statutes as were the South Carolina statutes considered in the case of Gunter v. Atlantic Coast Line R. Co., 200 U.S. 273, 26 S.Ct. 252, 50 L.Ed. 477. The construction of his powers and authority by the Attorney General, made without regard to pending litigation, throws some light, at least, upon the question. In an address on the "History, Powers and Duties of the Attorney General" by Honorable M. J. Yeomans, then Attorney General of Georgia, Report of the Georgia Bar Association 1937, in stating the things that the Attorney General of the State "may not do," among others, he said:

"1. He cannot consent for the State to be sued. I have been requested, on several occasions, to consent to a suit being brought against the State. The Attorney General has no such authority. Neither has any other State officer. A consent on the part of the State to be sued must be found in some legislative enactment."

To complete the picture, it should be stated that in his message to the legislature in 1908, then Govenor Smith, but who was not Governor at the time the suit was instituted in 1904, considered the litigation as "between the State and the Georgia Railroad and Banking Company." It may be that the proceeding was considered by the parties, counsel, the Court and,

while on appeal, by the Governor, as one against the State. Nevertheless, the State, as a Sovereign, when the point is properly presented and relied upon, has the right to attack the attempted waiver of sovereignty, or consent to suit, by officers not plainly authorized by statute to so subject the State to suit. In Ford Motor Company v. Department of Treasury, 323 U.S. 459, 467, 468, 469, 65 S.Ct. 347, 89 L.Ed. 389, there is a clear holding to this effect. Indeed this proposition does not involve a mere matter of parties or privies, but goes directly to the right of the Sovereign to immunity from suit except where it has clearly consented thereto as a Sovereign. Strict enforcement of the rule is essential to prevent this essential attribute from being frittered away by assumed or even pretended waiver of the State's immunity from suit by officers not authorized to do so. The only safe rule in such an instance will appear to be that the only proper basis for declaring consent or establishing waiver must be found clearly expressed in some constitutional or statutory provision directly relating to the subject matter involved. This is the basis of the holding in Gunter v. Atlantic Coast Line Railroad Company, supra, which is confidently relied upon by the complainant in the present case. That decision, as appears therefrom, and from the construction given to it in two recent cases, Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 56, 64 S.Ct. 873, 878, 88 L.Ed. 1121, and Ford Motor Company v. Department of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389, supra, is predicated upon the South Carolina statutes, which had reference to an action for the collection of the taxes then involved, and provided that the Attorney General "shall defend said action for and on behalf of the state." The marked difference between the statutes of the State of Georgia and the South Carolina statute just referred to, renders clearly inapplicable the decision in the Gunter case. In view of the provisions of the Georgia statute, and the primacy of sovereign immunity from suit now asserted, the language of the Supreme Court as to the waiver by individuals of constitutional rights seems apposite, that is that " 'Courts indulge every reasonable pre-

sumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.'" Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 146 A.L.R. 357, citing Aetna Insurance Company v. Kennedy, 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177; Hodges v. Easton, 106 U.S. 408, 412, 1 S.Ct. 307, 27 L.Ed. 169; Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 307, 57 S.Ct. 724, 81 L.Ed. 1093. See also, Glasser v. U.S., 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680.

█ It is true, as argued by the complainant, that following the decision in the Wright case in this Court, affirmed by the Supreme Court of the United States, no State officer for many years made any attempt to assess the charter lines of the defendant for ad valorem taxes. The decision in Gunter v. Atlantic Coast Line Railroad Company, supra, gives some weight to this feature, and of course "Administrative construction by a state of its statutes of consent", is entitled to weight. Ford Motor Company v. Department of Treasury, supra [323 U.S. 459, 65 S.Ct. 353.] The conclusive effect of such official inaction, however, is seriously underminded, if not destroyed, by the action of the present complainant in instituting in the State Court in 1945 a proceeding against the State Revenue Commissioner of the State of Georgia, first naming him defendant "in his representative capacity," but afterwards amending it to read as against the named individual "who is State Revenue Commissioner of the State of Georgia," and which was afterwards amended to substitute as a party his successors in office as State Revenue Commissioner, as defendants. In that proceeding, the 1907 decree of this Court was submitted as res adjudicata, as was also the decision of the Supreme Court of Georgia in State of Georgia v. Georgia Railroad and Banking Company, 54 Ga. 423. In that proceeding the question was squarely presented by demurrer that the suit was "in reality a suit against the State of Georgia and the State of Georgia has not consented to be made a party to this action or for the action to proceed against it." The trial court overruled this demurrer, but its judgment was reversed by the Supreme Court with directions that the same be sustained, and the petition dismissed because patently a proceeding against the State without its consent. Musgrove v. Georgia Railroad and Banking Company, 204 Ga. 139, 49 S.E.2d 26. Appeal to the Supreme Court of the United States was dismissed. Georgia Railroad and Banking Company v. Musgrove, 335 U.S. 900, 69 S.Ct. 407. The Supreme Court of Georgia expressly referred to the former litigation in this Court and directed attention to the fact that in that case the question of the state's consent to suit was not raised. The Gunter case, supra, was cited in the decision and the Supreme Court of Georgia plainly did not consider the law of Georgia to be to the same effect as that of South Carolina there considered. The question of waiver and the construction of the effect of the former decree was directly presented, for a copy of the entire record of the Wright case in this Court and in the Supreme Court of the United States was attached as a part of the petition in support of the plea of res adjudicata and as an estoppel. This holding by the highest Court of the State of Georgia upon the identical issues now sought to be presented, that the proceeding was one against the State and therefore not maintainable without the State's consent, is more than an "administrative construction" and is a holding by every fair implication that the Georgia statutes did not provide authority for the officers participating in the former litigation to waive the State's immunity from suit or evidence its consent. In these circumstances, the admitted inaction of the State officials for a long period of time is entitled to no compelling force in determining the effect of the participation by the State officers in the former litigation.

█ The present defendant urges the decision in the Musgrove case, supra, as res adjudicata upon the principle stated in 50 Corpus Juris Secundum, Judgments, § 597, page 15, as follows: "Although it has been said that, when a cause has been once fairly tried, it ought not to be tried again, even

if the parties are willing, it is nevertheless a general rule that a party entitled to claim the benefit of a former judgment may waive or estop himself to assert such right. So, where a party * * * joins issue on the very questions settled by the judgment, or voluntarily opens an investigation of the matters which he might claim to be concluded by it, * * * he will be held to have waived the benefit of the estoppel, and the case may be determined as though no such former judgment had been rendered." In this case we find it unnecessary to explore this principle to its fullest extent as an application of res adjudicata. It nevertheless seems to be pertinent in determining the effect to be given to the provisions of the Georgia statutes and the circumstances surrounding the former litigation in this Court, as well as the inaction of the State officers since the rendition of the decree therein.

■ It is concluded that no sufficient showing is made that in the original proceedings in this Court the State waived its immunity from suit or became bound by the decree. The question is therefore open, and being now asserted in bar of the present proceeding, it must be sustained.

The claimant contends that even if the State be not bound, it is nevertheless entitled to proceed by the present action as ancillary to the original suit against the defendant successor in office of William A. Wright, the Comptroller General of Georgia, defendant in the original suit. Under the law of Georgia defendant, Redwine, as the State Revenue Commissioner of the State of Georgia, is in effect the successor in office of the Comptroller General. However, this question is immaterial, for as well demonstrated in Musgrove v. Georgia Railroad and Banking Company, supra, the suit is in substance and direct effect an action against the State, and not maintainable without its consent when the point is properly presented, as it now is. In view of the well-considered opinion and discussion by Mr. Justice Bell in that case, no further discussion on this point is necessary here, except by reference. Complainant contends that the true holding of the Georgia Supreme Court in the case just

mentioned is that a proceeding for a declaratory judgment would not lie. Even if this were true, the opinion is nevertheless sound and controlling upon the points here involved, but it must be borne in mind that as clearly appears, that proceeding was also one for an injunction, and as to this feature, substantially identical with the present proceeding.

For the reasons just stated, it is clear that the effort to enforce the prior decree, as well as the relief sought by the ancillary proceeding, are both proceedings against the State, which are not permissible.

■ Complainant further contends that the 11th Amendment does not prohibit suits against a State official to enjoin the enforcement of a State tax law, or any other State law, contrary to the Constitution of the United States, and numerous authorities are cited in support of this contention. It of course must be conceded that in proper circumstances, and especially where there is involved no specific performance of a contract by the State, a suit against a State official to restrain illegal action, has been held not to be such a suit against the State as is prohibited by the 11th Amendment. It is not necessary to enter upon any extended discussion of the numerous adjudications which sustain the general proposition asserted by the complainant. There are adjudications which contain language, not directly controlling or involved in the case, to the effect that even where a contract of the State is involved, the assertion of restraint against the State official is not a suit against the State. However, none of these determines the particular point here involved, and that is, as clearly stated in Re Ayers, 123 U.S. 443, 502, 8 S.Ct. 164, 181, 31 L.Ed. 216, a ruling which has not been departed from, that

"A bill in equity for the specific performance of the contract against the state by name, it is admitted could not be brought. In Hagood v. Southern, 117 U.S. 52, 6 S.Ct. 608, [29 L.Ed. 805], it was decided that in such a bill, where the state was not nominally a party to the record, brought against its officers and agents, having no personal interest in the subject-mat-

ter of the suit, and defending only as representing the State, where 'the things required by the decree to be done and performed by them are the very things which, when done and performed, constitute a performance of the alleged contract by the state,' the court was without jurisdiction, because it was a suit against a state.

"The converse of that proposition must be equally true, because it is contained in it; that is, a bill, the object of which is by injunction, indirectly, to compel the specific performance of the contract, by forbidding all those acts and doings which constitute breaches of the contract, must also, necessarily, be a suit against the state. In such a case, though the state be not nominally a party on the record, if the defendants are its officers and agents, through whom alone it can act in doing and refusing to do the things which constitute a breach of its contract, the suit is still, in substance, though not in form, a suit against the state."

As clearly pointed out in the decision in that case, the point to be borne in mind in applying the principle of the authorities is that a suit predicated upon a contract with the State (the one in the present case alleged to be prescribed by the complainant's charter), by enjoining the act of an officer and to indirectly compel the specific performance of the contract, "by forbidding all those acts and doings which constitute breaches of the contract, must * * * be a suit against the state." The present suit is predicated upon the claim that the assessment and collection against its charter tax lines, as otherwise permitted by the statute, would constitute an impairment of the obligation of the *contract* so that the principle of the Ayers case is inescapeably applicable, because to grant the relief here sought will require the State to comply with and perform its contract of exemption. In fact, there is no claim of unconstitutionality in the statute under which the defendant threatens to proceed, but merely that *because of the contract,* such procedure would unconstitutionally impair the obligation of the contract. The State is the contracting party, and an injunction against its officer in this case would be merely an enforcement of the State's contract in a suit in which it has not consented to be sued. In re Ayers, supra, 123 U.S. 443, at page 503, 8 S.Ct. 164, 31 L.Ed. 216.

Therefore, the defendant official has in this case not merely urged the State's immunity as justification for his intended official acts,—he has established that the suit is in fact against the State.

The Gunter case referred to above involved a charter exemption from taxation. Its language that a suit against State officers to enjoin them from enforcing an unconstitutional tax was not a suit against the State within the prohibition of the 11th Amendment, was clearly not considered controlling upon the contract feature of the case, or else it would not have been necessary to determine what was considered the actual question involved, that is, whether the State waived its immunity from suit. In the other adjudications cited by the complainant, there was either no express contract by the State involved, or this question was not considered controlling, or the point was not raised. So it may be stated that there is no opinion subsequent to the Ayers case, supra, which expressly, or by necessary implication, weakens its controlling effect.

Under our dual system of Government, recognition of the right and power of a State as a Sovereign, is of course essential and well understood. The importance of maintaining State Sovereignty and immunity from suit in a proper case, as provided by the 11th Amendment (the history of which need not be repeated here), is such that we have fully considered that question as here presented without regard to the ultimate merits of the contentions of the complainant as they are here, or may be hereafter, asserted when and if the State may itself move against the complainant in breach or avoidance of the contract of exemption from taxation provided in the complainant's charter. Thus, without any expression upon the ultimate merits of the case, but upon determination that the proceeding is in effect one against the State and prohibited by the 11th Amendment, we conclude that this Court is without jurisdiction of the present proceeding

and that the motion of the defendant now urged in effect on behalf of the State, should be, and the same hereby is, sustained.

The complaint accordingly is dismissed for want of jurisdiction in this Court to entertain the same.

SCARLETT, District Judge.

I respectfully dissent from the majority opinion in this case.

There is no necessity for my giving a lengthy statement of the facts in this case. Suffice to say that the State of Georgia for over seventy years has, by various procedures and various forms, been trying to vitiate or nullify this contract in question which is the basis of this suit under consideration. City Council of Augusta v. Georgia Railroad and Banking Company, 26 Ga. 651, 662 et seq.; State of Georgia v. Georgia Railroad & Banking Company, 54 Ga. 423; Goldsmith, Comptroller Sc. v. Georgia Railroad Company, 62 Ga. 485.

Judge Newman of this court (Northern District of Georgia), on the 3d day of July, 1907, decided the contract at issue between the State of Georgia, acting by and through its Legislature and Governor and The Georgia Railroad & Banking Company was a valid and binding contract. Judge Newman's decision was affirmed by the Supreme Court of the United States in the case of Wright, Comptroller, v. Georgia Railroad and Banking Company, 216 U.S. 420, 30 S.Ct. 242, 54 L.Ed. 544.

The plaintiff in this case, The Georgia Railroad & Banking Company, has filed a motion for judgment on the pleadings or for summary judgment. The defendant has filed a motion to dismiss. The majority of this court has decided to sustain the motion to dismiss for reasons as set forth in their decision. I am deciding in favor of a judgment on the pleadings or summary judgment as follows:

I believe this Court has jurisdiction because this action is an ancillary or supplemental bill to effectuate or enforce a prior decree of this court as hereinabove stated. See also Root v. Woolworth, 150 U.S. 401, 14 S.Ct. 136, 37 L.Ed. 1123; Gunter v. Atlantic Coast Line Railroad Company, 200 U.S. 273, 26 S.Ct. 252, 50 L.Ed. 477. The State of Georgia is therefore before this court by reason of these decisions Being before this court this action is merely, as stated above, simply an action to effectuate the prior decree of this court.

I do not believe the case of Musgrove v. Georgia Railroad and Banking Company, 204 Ga. 139, 49 S.E.2d 26, cited by The State of Georgia and the majority of this court is applicable to this case, because that case merely decided the question of state practice and did not decide this particular federal question, or any other federal question.

The judgment of this Court as affirmed by the Supreme Court of the United States is conclusive on the validity and effect of the contract of exemption not only as against the contentions actually urged in that case but as against all contentions that could have been urged. See Gunter v. Atlantic Coast Line Railroad Company, 200 U.S. 273, 26 S.Ct. 252, 50 L.Ed. 477; Deposit Bank of Frankfort v. Frankfort, 191 U.S. 499, 24 S.Ct. 154, 48 L.Ed. 276; City of New Orleans v. Citizens Bank, 167 U.S. 371, 17 S.Ct. 905, 42 L.Ed. 202; Montgomery v. Thomas, 5 Cir., 146 F.2d 76; Leininger v. Commissioner, 6 Cir., 86 F.2d 791.

On Motion for Rehearing

In written argument on motion for rehearing, counsel for complainant contends that the opinion of the majority is subject to the construction that it forbids any resistance by complainant to the actual levy and sale of its property by the State for the collection of taxes. Without intimating any agreement whatever with this view of the effect of the order of the Court dismissing the complaint, there appears no objection to further clarification of the order of the majority by the statement that the Court did not intend to, and did not, hold that if and when the State itself proceeded to levy upon and sell any of the property of the complainant, the complainant was debarred from contesting the validity of the claim sought to be asserted. We did not, and do not now, intimate any advisory opinion as to the proper remedy

of the complainant in such circumstances since, as heretofore held, the present proceeding may not be maintained against the State.

The motion for a rehearing is denied.