## GEORGIA RAILROAD & BANKING CO.

### v.

### REDWINE.

#### Civ. No. 185.

United States District Court,
N. D. Georgia, Newnan Division.

Aug. 11, 1952.

Spalding, Sibley, Troutman & Kelley, Robert B. Troutman, Furman Smith, Atlanta, Ga., for plaintiff.

Eugene Cook, Atty. Gen. of Ga., for defendant.

Before RUSSELL, Circuit Judge, HOOPER, Chief Judge, and SLOAN, District Judge.

PER CURIAM.

The present proceedings is another chapter in the history of the efforts of the Georgia Railroad and Banking Company to maintain its rights to the partial exemption from taxation provided by Section 15 of the Act of 1833 incorporating that railroad. Georgia Laws of 1833, p. 264. The facts of the present proceeding were outlined in a former ruling appearing in D.C. 85 F.Supp. 749.

Upon such former hearing of this case, it appeared that the field of dispute had been rather thoroughly explored and tested in past adjudications, which are there referred to, and whereby the validity of the exemption had been established. However, upon consideration of a point

not theretofore urged, it was held that the suit was in effect one to compel specific performance of a contract by the State of Georgia and could not be maintained. The ore from what then appeared to be a new vein of legal truth[1] upon assay in the final and controlling laboratory test, Georgia Railroad & Banking Co. v. Redwine, 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335, was found to be worthless. The cause was remanded for determination upon the merits. The plaintiff, by amendment, has alleged and, by answers to his requests for admission, has established that the expense of counsel fees and court costs of the former litigation[2] were paid from the Georgia State Treasury by warrants drawn by the Governor, and approved by the Comptroller General. The plaintiff therefore contends that the prior decrees are res adjudicata as to the State of Georgia, the present defendant State Revenue Commissioner, and the counties and municipalities on behalf of which the defendant is threatening to collect taxes from the plaintiff. Plaintiff has renewed its motion for summary judgment, as amended. Fulton County and the municipalities of Athens and Union Point have moved to be allowed to intervene. A hearing has been had, and the contentions of the plaintiff and defendant fully presented, as well as argument on behalf of parties at interest, not parties to the record. The movers for intervention were also heard, subject to final determination by the Court of their right to intervene.

The points and counter-points of the parties have been fully and ably presented by arguments and briefs which disclose thoughtful consideration of the issues and careful research and presentation of the authorities bearing upon the three principal questions presented. These are: first, whether the judicial pronouncements in earlier litigations, especially that of the Supreme Court of Georgia in State v. Georgia R. & B. Co., 1875, 54 Ga. 423, and by the Supreme Court of the United States in Wright v. Georgia R. & B. Co., 216 U.S. 420, 30 S.Ct. 242, 54 L.Ed. 544, are res adjudicata in the present proceeding; second, whether, if such decrees be not res adjudicata, they are nevertheless binding as authority; and, third, whether in any event the provision of the charter of the plaintiff granting a partial exemption from taxation is unconstitutional and void because contrary to the provisions of Articles 22, 23 and 24 of art. 1 of the Constitution of Georgia of 1798, in effect at the time of the passage of the Act of 1833, supra.

In the view which we have of this case, we find it unnecessary to pursue to any determinative conclusion the question of whether the ruling of the Supreme Court of Georgia in 54 Ga. 423, supra, constitutes res adjudicata in the technical sense. Likewise, we do not find material or necessary a precise determination of whether the decision of the Supreme Court of the United States in 216 U.S. 420, 30 S.Ct. 242, 54 L.Ed. 544, supra, should be given the effect of res adjudicata, or of estoppel. For, in either event, our judgment is controllingly influenced by the decision in Georgia Railroad & Banking Co. v. Redwine, supra, that the proceeding is one which can be maintained as against the State Officer, and thus conclusively affect the State. We must conclude that, at least as to all questions put in issue in the former litigation, the decree there entered is binding upon the present defendant, for it is conceded that he stands as successor in office to William A. Wright, Comptroller General, the defendant in the original suit, the defense of which the State assumed, and the expenses of which it paid. Gunter v. Atlantic Coast Line R. Co., 200 U.S. 273, 26 S.Ct. 252, 50 L.Ed. 477; Warren v. Suttles, 190 Ga. 311, 9 S.E.2d

---

1. Georgia Railroad & Banking Co. v. Redwine, D.C., 85 F.Supp. 749.

2. Georgia Railroad & Banking Co. v. Wright, C.C., 132 F. 912; Wright v. Georgia Railroad & Banking Co., 216 U.S. 420, 30 S.Ct. 242, 54 L.Ed. 544.

172; Coleman v. Fields, 142 Ga. 205, 82 S.E. 529. Even if this conclusion should be unsound, we nevertheless reach the same result when the question.is considered as ruled and controlled by the decisions in State v. Georgia R. & B. Co., supra, and Wright v. Georgia R. & B. Co., supra, along with other decisions, which are persuasive authorities. There can be no doubt that the Courts of Georgia and the Supreme Court of the United States have uniformly upheld the validity of the exemption in question as against all attacks, except those presently presented, to which we will hereinafter refer. This question was precisely ruled in the two cases to which we have just referred. In State v. Georgia R. & B. Co., 54 Ga. 423, supra, the headnote is as follows:

"By the original charter of the Georgia Railroad and Banking Company it was, in terms, provided that 'the stock of said company and its branches, shall be exempt from taxation for seven years from the completion of said railroads, or any one of them, and after that, shall be subject to a tax of not exceeding one-half of one per cent. per annum on the net proceeds of their investments:'

"Held, that under the settled rules of construction, it was competent for the legislature to grant this exemption, and forming, as it does, a portion of the contract of incorporation, any repeal of it by the legislature, without the consent of the corporation, is in violation of article 1, section 10, paragraph 1 of the constitution of the United States prohibiting any state from passing any law impairing the obligation of contracts."

In Wright v. Georgia R. & B. Co., 216 U.S. 420, 30 S.Ct. 242, 54 L.Ed. 544, supra, in dealing with the precise charter provisions now under consideration, the headnote states:

"An act of a state legislature attempting to tax the whole or any part of the capital or franchise of a corporation, whose charter contains an express limitation and method of taxation such as in this case, by any method other than that specified therein, impairs the obligation of the charter and is unconstitutional under the contract clause of the Federal Constitution."

The Supreme Court of Georgia, in Thompson v. Atlantic Coast Line R. Co., 200 Ga. 856, 38 S.E.2d 774, held that any attempt to revoke such an exemption by a constitutional provision, Article 1, Section 3, paragraph 3, Constitution of Georgia of 1945, was likewise "void and of no effect." Other decisions ruling to the same effect are set forth below,[3] and this recitation attempts no complete citation of all cases considering, or assuming, the validity of such exemption. We must, therefore, consider the question as definitely settled and controlled by prior authority. Of course, if the former decision in this proceeding, Wright v. Georgia R. & B. Co., 216 U.S. 420, 30 S.Ct. 242, 54 L.Ed. 544, does not preclude re-litigation of the issue we should consider and pass upon the attacks upon the validity of the exemption now asserted as defense to the plaintiff's complaint to determine if they require a different result and an overturning of all the former decisions. We have so considered them and find them without merit. We find in the provisions of Articles 22, 23 and 24 of the Constitution of Georgia of 1798, no prohibition against the granting of exemption from taxa-

---

3. Goldsmith v. Georgia R. R. Co., 62 Ga. 485; Wright v. Central of Ga. Rwy. Co., 236 U.S. 674, 35 S.Ct. 471, 59 L.Ed. 781; Wright v. Louisville & N. R. R. Co., 236 U.S. 687, 35 S.Ct. 475, 59 L.Ed. 788; Western & Atlantic R. R. Co. v. State, 54 Ga. 428; Central R. R. & B. Co. v. Georgia, 54 Ga. 401; Central R. R. & B. Co. v. State of Georgia, 92 U.S. 665, 23 L.Ed. 757; Rome R. R. Co. v. Mayor & Council, 14 Ga. 275; City Council of Augusta v. Georgia R. R. & B. Co., 26 Ga. 651; Ordinary of Bibb Co. v. Central R. R. & B. Co., 40 Ga. 646, 647.

tion which was provided by the charter of the plaintiff. Our conclusion is fortified by the fact that in none of the former proceedings participated in by those close to the event, familiar with, and, indeed, living under, the Georgia Constitution of 1798, did any of the learned and able lawyers who so vigorously resisted the validity of the perpetual exemption set forth in the charter of the plaintiff, nor the Courts in deciding such cases, consider these paragraphs of the Constitution to relate to, or forbid, the grant of exemption from taxation. Indeed, it is conceded by all parties that similar exemptions were provided in the charters of some thirty railroads in the early period of railroad construction. Upon our consideration of the language of these paragraphs of the Constitution of 1798 in the light of contemporary history and especially the then recent infamous experience of the Yazoo fraud, it is clear why no reliance was placed upon this ground of attack. It would have been then, as it is now, without merit.

■ We have also considered the remaining objections of the defendant which are contended to nullify the exemption claimed by the plaintiff, but do not find them to have such effect. It is well established that the adoption of the 14th Amendment to the Constitution of the United States did not destroy the validity of the exemption. See cases collected in 173 A.L.R. 15, 25. Neither did the failure of the plaintiff to build branches additionally authorized by its charter, one north of Athens toward the Tennessee line, and the other from Madison to Eatonton, render the exemption unavailable to it 'as to the other lines actually built. We think the question of whether that portion of the railroad from Madison to Atlanta is covered by the exemption is controlled, adversely to the contentions of the defendant, by the language of the Act authorizing such construction, Georgia Laws of 1837, p. 212, section 1, and the decisions in State of Georgia v. Georgia R. & B. Co., su-

pra; Wright v. Georgia R. & B. Co., supra, and is also indicated by the decision in Wright v. Louisville & N. R. Co., 236 U.S. 687, 35 S.Ct. 475, 59 L.Ed. 788.

While, under the statutory scheme with reference to the assessment and collection of ad valorem taxes upon railroads, an injunction restraining the State Revenue Commissioner from assessing and attempting to collect such taxes will effectively bar the rights of the counties and municipalities involved to receive such taxes, since such an injunction would prevent action at its beginning, we, nevertheless, see no objection to permitting the County of Fulton and the municipalities of Athens and Union Point to intervene and assert their claims in this proceeding. That portion of the intervention of the City of Union Point which seeks affirmative relief presents a matter beyond the scope of this litigation, and is hereby stricken and dismissed, without prejudice. For reasons already indicated, the grounds of attack upon the exemption from taxation asserted are not successfully maintained by these intervenors. However, as we did above in dealing with the defendant's contentions, we may state that even if our conclusion that the counties and municipalities affected are bound by the former adjudications should be erroneous the same result is required by our finding that the grounds of attack urged as new matter, and therefore not concluded by the former litigations, do not authorize a different ruling.

We conclude that the reasoning and binding effect of former adjudications substantially control our ruling in the present proceeding and that no cause is here shown which authorizes the Court to overrule and upset them. It follows, therefore, that the plaintiff is entitled to the relief sought to secure the rights established by the former decree of this Court as modified and affirmed by the decision of the Supreme Court of the United States. A proper decree so providing may be presented after notice.